IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>APPLE, INC.,<br><br>　　　　Defendant. | Civil Action _____<br><br>Jury Trial Demanded |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Personalized Media Communications, LLC ("PMC" or "Plaintiff"), by and through its attorneys, hereby demands a jury trial and complains of Defendant Apple, Inc. ("Apple" or "Defendant") as follows:

**NATURE OF THE ACTION**

1.  This is an action for patent infringement arising under the patent laws of the United Sates, 35 U.S.C. §§ 271, *et seq.*, to enjoin infringement and obtain damages resulting from Apple's unauthorized manufacture, use, sale, offer to sell and/or importation into the United States for subsequent use or sale of products, methods, processes, services and/or systems that infringe one or more claims of United States Patent No. 8,191,091 (the "'091 Patent") (attached as Exhibit A) entitled "Signal Processing Apparatus and Methods" and United States Patent No. 8,559,635 (the "'635 Patent") (attached as Exhibit B) entitled "Signal Processing Apparatus and Methods." PMC seeks injunctive relief to prevent Defendant from continuing to infringe PMC's patents. In addition, PMC seeks a recovery of monetary damages resulting from Defendant's past infringement of these patents.

2. This action for patent infringement involves Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of infringing digital rights management (DRM) technology, including, but not limited to, DRM technology known as FairPlay, which is used at least by Defendant's QuickTime and iTunes/App Store/Apple Music multimedia software which software in turn is used by, for example, Defendant's iPhone, iPad, iPod, MacOSX devices, Apple TV, iTunes Store, App Store and iBooks in connection with Defendant's distribution of encrypted digital content, including but not limited to, software ("apps"), iBooks, audio books, TV programs, movies and music to authorized user devices (the "Accused Products and Services").  For example, FairPlay-encrypted content may be purchased through Defendant's iTunes Store or App Store, using Defendant's software, including but not limited to, the iTunes, App Store, and Apple Music applications.  The iTunes software, App Store software, Apple Music, and Defendant's QuickTime multimedia software utilize built-in FairPlay DRM technology to decrypt and play or store the encrypted files.

## THE PARTIES

3. PMC is a limited liability company duly organized and existing under the laws of the State of Texas, with its principal place of business in Sugar Land, Texas.

4. Defendant is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, CA 95014.  Defendant has designated CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 as its registered agent for service of process.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Defendant is subject to personal jurisdiction in this judicial district and division because it regularly transacts business in this judicial district and division by, among other

things, selling and offering for sale its products and services, including the Accused Products and Services, to customers located in this judicial district and division.  In addition, Defendant has committed acts of direct infringement, contributory infringement and/or inducement of infringement, of one or more of the claims of the patents-in-suit in this judicial district and division.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b) because Defendant is subject to personal jurisdiction in this district, conducts business in this district, has committed acts of patent infringement in this district, and has induced and/or contributed to acts of patent infringement in this district.

8. By way of example, and without limitation, Defendant is registered to do business in the State of Texas and lists CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201 as its registered agent for service of process.

9. Further, by way of example, and without limitation, in June 2014, Defendant opened the first phase of its expanded Americas Operations Center in Austin, TX, within the subpoena power of the Eastern District of Texas.  Apple already has a substantial presence in Austin.

10. As part of its new Economic Development Agreement with Austin, Apple will be investing roughly $300M to expand the America's Operations Center in exchange for tax breaks and other benefits.

11. The company has announced its intention to hire 3600 new employees for its Austin Operations Center, which will double Defendant's current Texas-based workforce and make its Texas facilities one of Apple's largest bases of operations.  (*See* Exhibit C at 1.)

12. Upon information and belief, Defendant conducts operation support activities related to the Accused Products and Services at its Texas facilities.

13. Further, by way of example, and without limitation, Defendant currently operates, and has operated since 2010, a microchip design center in Austin, TX.  (Exhibit C at 1.)

14. By way of example, and without limitation, the Accused Products and Services are used, offered for sale and sold at numerous retail locations throughout this judicial district including, for example, at Best Buy stores in Longview, Tyler, and Texarkana.  (*See* Exhibit D.)

15. Apple's web site promotes its products and services as being available at Verizon Wireless in Marshall, as well as at Verizon Wireless, AT&T, and Target in Longview, and other locations in this judicial district.  (*See* Exhibit DD.)

16. Defendant has purposefully availed itself of the privilege of conducting business within the State of Texas, which activities, upon information and belief, infringe one or more claims of PMC's patents in suit, causing injury in this judicial district.

## PATENTS-IN-SUIT

17. On May 29, 2012, United States Patent No. 8,191,091 (the '091 Patent) was duly and legally issued for an invention entitled "Signal Processing Apparatus and Methods."

18. On October 15, 2013, United States Patent No. 8,559,635 (the '635 Patent) was duly and legally issued for an invention entitled "Signal Processing Apparatus and Methods."

19. PMC owns all right, title, and interest in and to the '091 and '635 patents (collectively, the "patents-in-suit") and possesses all rights of recovery.

## FACTUAL BACKGROUND

20. PMC owns a seminal portfolio of intellectual property that covers, among other things, the use of control and information signals in electronic media content to process the

content and generate output that is personalized and relevant to a user and the application of novel content protection techniques to protect against piracy. PMC's intellectual property portfolio contains over eighty patents, including the patents-in-suit, with additional patent applications pending.

21.   Numerous media and telecommunications companies use PMC's technology including providers of electronic media content that is personalized and relevant to a particular user, providers of devices to deliver that content to users, and providers of the networks that deliver the content. For example, licensees of PMC's patented technology include Sony, Motorola, Sharp, Panasonic, DirecTV, DISH Network, EchoStar, The Weather Channel, Gemstar-TV Guide, and Arris, among others.

22.   PMC has received professional acclaim for its patented technology. For example, in 2011, Ocean Tomo, LLC issued its *Ocean Tomo Quality Inventor Study* which assessed patent quality and relative value associated with patent portfolios in various technology sectors. With respect to PMC's patents, the Ocean Tomo study found that "[i]n Wireless, the top rated inventor with 16 patents [at that time] is [PMC's] John Harvey." The study further concluded that PMC's patents are "in the top 0.1% of the appropriate 220,000 active U.S. utility patents granted in 2010." The patents-in-suit here are part of the same patent family.

23.   According to its own SEC filings, Defendant "designs, manufactures and markets mobile communication and media devices, personal computers and portable digital music players, and sells a variety of related software, services, accessories, networking solutions and third-party digital content and applications." Apple Inc. Form 10-Q for the quarterly period ended March 28, 2015 at 23.  (Excerpt attached as Exhibit E.)

24. Defendant's "products and services include iPhone®, iPad®, Mac®, iPod®, Apple TV®, a portfolio of consumer and professional software applications, the iOS and OS X® operating systems, iCloud®, Apple Pay™ and a variety of accessory, service and support offerings . . . The Company [Defendant] also sells and delivers digital content and applications through the iTunes Store®, App Store™, Mac App Store, and iBooks Store™ (collectively "iTunes").  The Company [Defendant] sells its products worldwide through its retail stores, online stores and direct sales force, as well as through third-party cellular network carriers, wholesalers, retailers and value-added resellers." *Id*.

25. "As part of its strategy, the Company [Defendant] continues to expand its platform for the discovery and delivery of digital content and applications through iTunes®, which allows customers to discover and download digital content, iOS and Mac applications, and books through either a Mac or Windows-based computer or through iPhone, iPad and iPod touch® devices ('iOS devices')." *Id*. at 24.

26. "iTunes generated a total of $2.8 billion and $5.4 billion in net sales during the second quarter and first six months of 2015, respectively, compared to $2.6 billion and $5.0 billion during the second quarter and first six months of 2014, respectively.  Growth from iTunes was driven primarily by increases in revenue from iOS app sales reflecting continued growth in the installed base of iOS devices, the expansion in third-party iOS apps available, and increased volume of in-app purchases." *Id*. at 27.

27. Defendant has been using a digital rights management (DRM) technology, including at least the DRM technology known as FairPlay, to encrypt and decrypt a variety of digital content and software for distribution to its customers.

28. The FairPlay DRM technology is built into one or more of the iTunes application, App Store application, Apple Music application, and the QuickTime multimedia software application, and is used by the iPhone, iPod, iPad, Apple TV, iTunes Store, The App Store, Apple Music, and related software and services. A FairPlay-encrypted file, such as a piece of media content or software application, is digitally encrypted and can only be decrypted by an authorized user device based on user-specific and/or device-specific decryption information. The FairPlay DRM technology plays a critical role in Defendant's sale and distribution of digital content and software applications and is essential to the commercial success of Defendant's product ecosystem.

29. Defendant has had knowledge of PMC's patent portfolio that included the applications that led to the patents-in-suit. For example, between 2010 and 2014 PMC and Defendant conducted a series of discussions including in-person meetings with Apple personnel concerning PMC's patent portfolio and its applicability to various of Defendant's products and services, including FairPlay DRM. Over the course of these discussions, PMC provided Defendant with copies and/or lists of its issued patents and pending patent applications, prosecution file histories of some of its issued patents, and explanations of claim coverage including claims covering encryption/decryption methods and DRM technology, among other materials.

30. PMC is being irreparably harmed by Defendant's infringement of its valuable patent rights. Moreover, Defendant's unauthorized, infringing use of PMC's patented processes is threatening the value of this intellectual property because Defendant's conduct results in Plaintiff's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and/or importing the patented inventions.

31. Defendant's disregard for PMC's property rights similarly threatens PMC's relationships with potential licensees of this intellectual property. The Defendant will derive a competitive advantage over any of PMC's future licensees from using PMC's patented technology without paying compensation for such use. Accordingly, unless and until Defendant's continued acts of infringement are enjoined, PMC will suffer further irreparable harm for which there is no adequate remedy at law.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 8,191,091

32. Paragraphs 1-31 are incorporated by reference as if fully restated herein.

33. The normal operation of the Accused Products and Services results in the practice of the methods claimed in at least claims 13, 15-16, 18, 20, 21, 23-24, 26, 27, and 30 of the '091 Patent.

34. For example, claim 13 of the '091 Patent recites "a method of decrypting programming at a receiver station." The receipt and decryption of a FairPlay-encrypted file by an Accused Product/Service practice every step of the claimed method.

35. Defendant's iTunes, App Store, Apple Music, and QuickTime software applications (installed on end users' MacOS or Windows computers) and Apple's iOS products (including iPhone, iPod, iPad, and Apple TV) implement the method of claim 13 to decrypt digital content on end users' computing or entertainment devices.

36. The digital content may include, for example, movies, television shows, e-books, audio books, music, and/or apps.

37. Each user device is a "receiver station" as claimed. A user device can receive FairPlay-encrypted digital content either from Defendant's iTunes Store and/or App Store or from another device.

38. On information and belief, a user device can also receive FairPlay-encrypted content from Defendant's iCloud.

39. Under the FairPlay DRM scheme, content delivered from Defendant's content server is encrypted with a master key which is in turn encrypted with a random user key corresponding to the user's Apple ID account.

40. Both the encrypted master key and the encrypted content are packaged in a container file and delivered in the form of "an encrypted digital information transmission including encrypted information," as claimed in claim 13.

41. The user device, employing hardware and/or software supplied by Defendant, can recognize a FairPlay-encrypted piece of content and detect the presence of the encrypted master key as "an instruct-to-enable signal."

42. On information and belief, this detection is necessary for the user device to select a matching user key needed to decrypt the master key.

43. The user device then passes the encrypted master key portion of the container file to a processor (or a decryptor, a special-purpose processor.)

44. The processor then determines which user key to use to decrypt the encrypted master key (the "instruct-to-enable signal") in order to recover a decrypted master key ("a first decryption key").

45. Once the corresponding user key has been identified, the encrypted master key can be decrypted and the master key (the "first decryption key") is located and obtained.

46. The encrypted content ("said encrypted information") is then decrypted based on the now decrypted master key ("said first decryption key") and outputted for consumption by the end user.

47. Defendant makes, uses, sells, offers for sale, and imports into the United States Accused Products and Services that practice the methods claimed in at least claims 13, 15-16, 18, 20, 21, 23-24, 26, 27, and 30 of the '091 Patent. For example, on information and belief, Defendant itself uses the Accused Products and Services to practice the claimed methods for example in connection with the testing and evaluation of the Accused Products and Services. Defendant's actions constitute direct infringement of the '091 Patent in violation of 35 U.S.C. § 271(a).

48. Upon information and belief, Defendant has knowledge of the '091 Patent resulting from PMC giving Defendant notice of and detailed information on PMC's patent portfolio including that it would cover Apple's FairPlay. Thus, based on the extensive information exchanged between PMC and Apple over a four year period, Apple has knowledge of the '091 Patent and that the normal operation of the Accused Products and Services practices the methods claimed in at least claims 13, 15-16, 18, 20, 21, 23-24, 26, 27, and 30.

49. Defendant induces by providing its customers and the general public with the Accused Products and Services, and information and directions on how to use the Accused Products and Services in a manner that infringes the '091 Patent such as, for example, through user manuals, instructional videos and step-by-step instructions on how to download FairPlay-protected digital content, all of which are made available on Defendant's Support web pages.

50. Such conduct on Defendant's part intentionally encourages, urges, aids and abets, and induces its customers and the general public to commit infringing acts with the knowledge acquired from PMC, or willful blindness to the fact, that such acts infringe the methods claimed in at least claims 13, 15-16, 18, 20, 21, 23-24, 26, 27, and 30 of the '091 Patent.

51. Defendant's actions constitute inducement of infringement in violation of 35 U.S.C. § 271(b).

52. Defendant makes, offers to sell and sells within the United States, and imports into the United States the Accused Products and Services for use in connection with the practice of PMC's patented inventions. Defendant knows those Accused Products and Services to be especially made or especially adapted for practicing the methods claimed in at least claims 13, 15-16, 18, 20, 21, 23-24, 26, 27, and 30 of the '091 Patent, and those Accused Products and Services are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Defendant's actions, in providing those Accused Products and Services with the knowledge that they are especially made or adapted for practicing the claimed inventions, without substantial non-infringing uses, contribute to direct infringement by Defendant's customers who use and operate the Accused Products and Services and, thus, practice the methods claimed in at least claims 13, 15-16, 18, 20, 21, 23-24, 26, 27, and 30 of the '091 Patent. Defendant's actions constitute contributory infringement in violation of 35 U.S.C. § 271(c).

53. Defendant's acts of direct infringement, inducement of infringement, and contributory infringement have caused damage to PMC, and PMC is entitled to recover from Defendant the damages sustained by PMC as a result of Defendant's wrongful acts in an amount subject to proof at trial. Defendant's infringement of PMC's exclusive rights under the '091 Patent will continue to damage PMC's business, causing irreparable harm for which there is no adequate remedy at law, unless Defendant is enjoined by this Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 8,559,635

54. Paragraphs 1-33 are incorporated by reference as if fully restated herein.

55. The normal operation of the Accused Products and Services results in the practice of the methods claimed in at least claims 3, 13, 18, 20, 32, and 33 of the '635 Patent. For example, claim 18 of the '635 Patent recites "a method of processing signals at a receiver station." The receipt and decryption of a FairPlay-protected file by an Accused Product/Service practice every step of the claimed method.

56. Defendant's iTunes, App Store, Apple Music, and QuickTime software applications (installed on end users' MacOS or Windows computers) and iOS products (including iPhone, iPod, iPad, and Apple TV) implement the method of claim 18 to decrypt digital content on end users' computing or entertainment devices.

57. The digital content may include movies, television shows, e-books, music, and/or apps. Each user device is a "receiver station" as claimed.

58. A user device can receive FairPlay-encrypted digital content either from Defendant's iTunes store and/or App Store or from another device.

59. On information and belief, a user device can also receive FairPlay-protected content from Defendant's iCloud.

60. Under the FairPlay DRM scheme, content delivered from Defendant's content server is encrypted with a master key which is in turn encrypted with a random user key corresponding to the user's Apple ID account.

61. Both the encrypted master key and the encrypted content are packaged in a container file.

62. The data transmission that carries the container file is "at least one encrypted digital information transmission" which, as a pure digital transmission, is "unaccompanied by any non-digital information transmission."

63. The user device, employing hardware and/or software supplied by Defendant, can recognize a FairPlay-encrypted piece of content and locate/decrypt the encrypted master key.

64. On information and belief, such location is necessary for the user device to select a matching user key needed to decrypt the master key.

65. The user key is therefore a "code" based on which a processor in the user device can control a decryptor to decrypt the encrypted digital master key portion of the container file ("a portion of said at least one information transmission").

66. Once decrypted, the master key also constitutes a "code" as claimed which is passed on to a processor in the user device to control decryption of the protected content portion of the container file ("a portion of said at least one information transmission").

67. The decrypted content is then passed to "an output device" for consumption by the end user.

68. Defendant makes, uses, sells, offers for sale, and imports into the United States Accused Products and Services that practice the methods claimed in at least claims 3, 13, 18, 20, 32, and 33 of the '635 Patent. For example, on information and belief, Defendant itself uses its Accused Products and Services to practice the claimed methods for example in connection with the testing and evaluation of the Accused Products and Services. Defendant's actions constitute direct infringement of the '635 Patent in violation of 35 U.S.C. § 271(a).

69. Upon information and belief, Defendant has knowledge of the '635 Patent resulting from PMC giving Defendant notice of and detailed information on PMC's patent portfolio including that it would cover Apple's FairPlay. Thus, based on the extensive information exchanged between PMC and Apple over a four year period, Apple has knowledge

of the '635 Patent and that the normal operation of the Accused Products and Services practices the methods claimed in at least claims 3, 13, 18, 20, 32, and 33.

70. Defendant induces by providing its customers and the general public with the Accused Products and Services, and information and directions on how to use the Accused Products and Services in a manner that infringes the '635 Patent such as, for example, through user manuals, instructional videos and step-by-step instructions on how to download FairPlay-protected digital content, all of which are made available on Defendant's Support web pages.

71. Such conduct on Defendant's part intentionally encourages, urges, aids and abets, and induces its customers and the general public to commit infringing acts with the knowledge acquired from PMC, or willful blindness to the fact, that such acts infringe the methods claimed in at least claims 3, 13, 18, 20, 32, and 33 of the '635 Patent. Defendant's actions constitute inducement of infringement in direct violation of 35 U.S.C. § 271(b).

72. Defendant makes, offers to sell and sells within the United States, and imports into the United States the Accused Products and Services for use in connection with the practice of PMC's patented inventions. Defendant knows those Accused Products and Services to be especially made or especially adapted for practicing the methods claimed in at least claims 3, 13, 18, 20, 32, and 33 of the '635 Patent, and those Accused Products and Services are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Defendant's actions, in providing those Accused Products and Services with the knowledge that they are especially made or adapted for practicing the claimed inventions, without substantial non-infringing uses, contribute to direct infringement by Defendant's customers who use and operate the Accused Products and Services and, thus, practice the methods claimed in at least

claims 3, 13, 18, 20, 32, and 33 of the '635 Patent. Defendant's actions constitute contributory infringement in violation of 35 U.S.C. § 271(c).

73. Defendant's acts of direct infringement, inducement of infringement, and contributory infringement have caused damage to PMC, and PMC is entitled to recover from Defendant the damages sustained by PMC as a result of Defendant's wrongful acts in an amount subject to proof at trial. Defendant's infringement of PMC's exclusive rights under the '635 Patent will continue to damage PMC's business, causing irreparable harm for which there is no adequate remedy at law, unless Defendant is enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, PMC prays for judgment as follows:

A. That this Court adjudge and decree that the Defendant has infringed, directly and indirectly, the '091 Patent and the '635 Patent;

B. That this Court permanently enjoin Defendant and its subsidiaries, affiliates, successors and assigns, and each of their officers, directors, agents, servants, employees, attorneys, licensees, and all persons acting in concert or active participation with them, or on their behalf, or within their control, from engaging in any acts that constitute direct infringement, inducement of infringement, or contributory infringement of the patents-in-suit;

D. That this Court order an accounting, including a post-verdict accounting, to determine the damages to be awarded to PMC as a result of Defendant's infringement;

E. That this Court, pursuant to 35 U.S.C. § 284, enter an award to PMC of such damages as it shall prove at trial against Defendant that are adequate to compensate PMC for said infringement, such damages to be no less than a reasonable royalty together with interest and costs;

F. That this Court assess pre-judgment and post-judgment interest and costs, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

G. That this Court declare this case to be exceptional and direct Defendant to pay PMC its attorney's fees for this action, including those pursuant to 35 U.S.C. § 285; and

H. That PMC be awarded such further relief as this Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

PMC demands a trial by jury of all matters to which it is entitled to trial by jury pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

July 30, 2015

/s/ S. Calvin Capshaw
S. Calvin Capshaw
TX Bar No. 03783900
Elizabeth L. DeRieux
TX Bar No. 05770585
D. Jeffrey Rambin
TX Bar No. 00791478
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
P: (903) 236-9800
F: (903) 236-8787
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com
Email: jrambin@capshawlaw.com

**Of Counsel:**

Jennifer A. Albert
Stephen T. Schreiner
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC 20001

P: (202) 346-4000
F: (202) 346-4444
email: JAlbert@goodwinprocter.com
email: SSchreiner@goodwinprocter.com

Case 2:15-cv-01366-JRG-RSP Document 1 Filed 07/30/15 Page 17 of 17 PageID #: 17