IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PERSONALIZED MEDIA | § | |
| COMMUNICATIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:15-cv-1366-JRG-RSP |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Apple Inc.'s ("Apple") Rule 12(b)(6) Motion to Dismiss

for Failure to State a Claim. (Dkt. No. 34.) Apple contends that all claims in the four asserted

patents are patent-ineligible under § 101. Apple further contends issue preclusion bars Plaintiff

Personalized Media Communications, LLC ("PMC") from asserting the claims in U.S. Patent

No. 8,559,635 (the "'635 patent") and U.S. Patent No. 8,191,091 (the "'091 patent") are patent-

eligible. The Court has considered the arguments and finds that Apple's Motion to Dismiss (Dkt.

No. 34) should be **DENIED**.

## RULE 12(b)(6) STANDARD

Rule 8(a) requires "a short and plain statement of the claims showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) permits a party to move to dismiss a

claim if the pleader does not meet the conditions of Rule 8(a) and has "fail[ed] to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6)

motion a court must assume that all well-pled facts are true and view them in the light most

favorable to the non-moving party. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir.

2012). The Court must decide whether those facts state a claim for relief that is plausible on its

face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby*, 681 F.3d at 217 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## COLLATERAL ESTOPPEL

### I.   LEGAL STANDARD

In a patent infringement case, Fifth Circuit law provides the standard for issue preclusion and Federal Circuit law provides the standard on substantive issues of patent law. *See Soverain Software LLC v. Victoria Secret Direct Brand Mgmt.*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). The Fifth Circuit has held collateral estoppel applies if: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 391 (5th Cir. 1998); *see State Farm Mut. Auto Ins. Co. v. LogisticCare Sols., LLC*, 751 F.3d 684, 689 (Fed. Cir. 2014) (listing the elements of collateral estoppel).

### II.   ANALYSIS

Apple states that collateral estoppel bars PMC from asserting that the claims in the '635 patent and the '091 patent are patent-eligible under § 101. Apple notes that a Delaware court in *Personalized Media Communications, LLC v. Amazon.com, Inc.*, found that claim 1 of U.S. Patent No. 7,801,304 (the "'304 patent") was representative of all claims in the '304 patent. The Delaware court then found that claim 1 of the '304 patent was patent-ineligible under § 101. *See*

*Personalized Media Communications, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 332–333 (D. Del. 2015).

Apple contends that claim 1 of the '304 patent is indistinguishable from the claims in the '635 patent and the '091 patent in this case. Specifically, Apple point out that "[c]laim 2 of the '635 patent asserted by PMC . . . is virtually **word-for-word** identical to [] claim 1 of the '304 patent . . . ." (Dkt. No. 34 at 11.) Apple also asserts that claim 1 of the '304 patent is materially identical to claim 1 of the '635 patent and claim 13 of the '091 patent. (*See* Dkt. No. 34 at 12– 14.) Apple contends because claim 1 of the '304 patent, claim 1 of the '635 patent, and claim 13 of the '091 patent are similar, the issue of the patent-eligibility of the claims in the '635 patent and the '091 patent were argued and decided by the Delaware court. Apple contends for this reason that collateral estoppel bars PMC from asserting that the '635 patent and the '091 patent are directed to patent-eligible subject matter.

Under Federal Circuit law, collateral estoppel can apply when an issue is fully argued, finally decided, and necessary to a prior judgment. A ruling on an issue in a prior judgment can have preclusive effect even if the issue is raised in a later case involving different patents and different claims. *See Ohio Willow Wood Co. v. Alps S., L.L.C.*, 735 F.3d 1333, 1342 (Fed Cir. 2013). This is because "[i]t is the issues litigated, not the specific claims around which the issues were framed, that is determinative" of whether collateral estoppel should apply. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013). For example, as to a prior judgement of obviousness, "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Ohio Willow*, 735 F.3d at 1342.

The Court finds that collateral estoppel does not bar PMC from arguing that claim 1 of the '635 patent and claim 13 of the '091 patent are patent-eligible under § 101. Apple has not shown that claim 1 of the '635 patent and claim 13 of the '091 patent are materially the same as the claim the Delaware court found ineligible in *Personalized Media Communications, LLC v. Amazon.com, Inc.* (*See* Dkt. No. 34 at 12–14.)

*First*, Apple paraphrases the elements of claim 1 of the '635 patent and contends that they are only "minor wording differences" from the elements of the claim the Delaware court found patent-ineligible. Apple further contends that these "minor differences" make "claim 1 of the '635 patent [] actually ***broader*** than invalidated claim 1 of the '304 patent." (Dkt. No. 34 at 13.) PMC responds by pointing out that, for example, claim 1 of the '635 patent, unlike claim of the '304 patent, recites "form[ing] decrypted programming based on said control signal." (Dkt. No. 83 at 11.) PMC contends this element makes a difference in the patent-eligibility analysis because "form[ing] decrypted programming" can "go[] beyond the step of 'decrypting' and [can] further require[] additional post-decryption processing, such as reassembly of decrypted information in order to make the 'decrypted programming' ready for presentation." (Dkt. No. 83 at 11.)

The Court finds Apple has not shown how claim 1 of the '304 patent and claim 1 of the '635 patent are materially the same. The Delaware court carefully held that claim 1 of the '304 patent was directed to the abstract idea of "decryption." PMC's expert contends that claim 1 of the '635 patent, however, contains a "to form decrypted programming" element which causes the claim to be directed to something other than "decryption." On a motion to dismiss all factual disputes must be resolved in favor of the plaintiff. Accordingly, the Court finds that Apple has not shown that claim 1 of the '304 patent and claim 1 of the '635 patent are materially the same

4

despite at least this difference. Thus, the Court finds that the Delaware court's ruling on claim 1 the '304 patent does not collaterally estop PMC from arguing that claim 1 of the '635 patent is patent-eligible under § 101.

*Second*, Apple provides a high-level description of the elements of claim 13 of the '091 patent and asserts those elements are analogous to the elements of claim 1 of the '304 patent which the Delaware court found patent-ineligible. (Dkt. No. 34 at 13–14.) PMC contends in response that "[c]laim 13 of the '091 Patent also includes two method steps that are completely absent from claim 1 of the '304 Patent, and as a result claim 13 'recites a significantly different decryption procedure in which the receiver station must first determine how to locate 'a first decryption key' and then locate the key accordingly (i.e., 'based on said step of determining').'" (Dkt. No. 83 at 10.)

The Court finds Apple has not shown how claim 1 of the '304 patent and claim 13 of the '091 patent are materially the same. The Delaware court held that claim 1 of the '304 patent was directed to the idea of "decryption." PMC points out that claim 13 of the '091 patent recites elements directed to locating a "first decryption key." A claim directed to "decryption" and one directed to locating a "decryption key" can be seen as related but distinct claims. Since, on a motion to dismiss all factual disputes must be resolved in favor of the plaintiff, the Court finds Apple has not shown that claim 1 of the '304 patent and claim 13 of the '091 patent are materially the same despite this difference. The Court finds that the Delaware court's ruling on the '304 patent does not collaterally estop PMC from arguing that claim 13 of the '091 patent is patent-eligible under § 101.

*Finally*, the Court agrees with Apple that claim 1 of the '304 patent and claim 2 of the '635 patent are nearly identical. The Court, however, finds that it is unable to determine whether

the extra "decryptor" limitation in claim 2 of the '635 patent meaningfully changes the patent-eligibility analysis of the claim. Thus, the Court finds that the collateral estoppel effect of the Delaware court's ruling as to claim 2 of the '635 patent should be denied for now and should be deferred until summary judgment. This is the most prudent course of action since it will allow for a more complete development of the record and, since the Delaware court's ruling is currently on appeal at the Federal Circuit, potentially allow the Court to receive further guidance on the matter from the higher court.[1]

## ELIGIBILITY UNDER 35 U.S.C. § 101

### I.     LEGAL STANDARD

Section 101 of the Patent Act lists what is eligible for patent protection. The statute says: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that under § 101 there are three classes of inventions that are patent ineligible. Those classes of inventions are directed to laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1296–97 (2012), the Supreme Court set out a two-step test for distinguishing patents that claim patent-ineligible laws of nature, natural phenomena, or abstract ideas from patents that claim patent-eligible applications of those concepts.

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomena, or abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct.

---

[1] The claims are reproduced in full in Appendix A to the Report and Recommendation.

2347, 2355 (2014). "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *See id.* at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification," and asks "whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

For example, in *Bilski*, the Supreme Court found patent-ineligible "[c]laims 1 and 4 in petitioners' application" because the claims merely "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit held patent-ineligible a claim describing the abstract idea of "displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. Conversely, in *Enfish*, the Federal Circuit found patent-eligible a claim that did not describe an abstract idea but described a "data structure designed to improve the way a computer stores and retrieves data in memory." *Enfish*, 822 F.3d at 1339.

A court applies the second step of *Mayo* only when it finds that the claims are directed to a law of nature, natural phenomena, or abstract idea in the first step. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Id.* In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo*, 132 S. Ct. at 1298; *see Alice*,

134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that an] overall process [was] patent eligible because of the way the additional steps of the process integrated [an] equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1918)); *see Mayo*, 132 S. Ct. at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584, 590 (1978)).

In sum, a claim may be patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("[T]he '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."); *Bascom Glob. Internet Servs. v. AT&T Mobility LLC*, Case No. 2015-1763, 2016 WL 3514158, at *7 (Fed. Cir. Jun. 27, 2016) ("Filtering content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content."). However, a claim remains patent-ineligible if it describes "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

## II.      ANALYSIS

### A.      The '635 patent and the '091 patent

Apple asserts "there is no question that on the merits the asserted claims of the '635 and '091 patents are invalid under § 101 for claiming ineligible subject matter." (Dkt. No. 34 at 16.) Apple contends the claims are "directed to the abstract idea of converting information from one format to another (*i.e.*, decrypting information)" and the "additional elements of the claims, individually and in combination, do not recite an inventive concept that 'transforms' the nature of the claims into a patent-eligible application." (Dkt. No. 34 at 17.)[2]

#### 1.      The '635 patent

Apple asserts that claim 1 represents all claims in the '635 patent. Apple states that claim 1 itself shows the claim is directed to the abstract idea of "decrypting encrypted information" or "converting information from one format to another." Apple points out that all of the elements in claim 1 relate to "converting information" between formats. (Dkt. No. 34 at 18.) For example, Apple states that claim 1 requires "receiving encrypted digital programming, detecting a control signal in the programming, decrypting the control signal, decrypting the encrypted programming based on the control signal, and presenting the decrypted programming." (Dkt. No. 34 at 18.)

Furthermore, Apple asserts that claim 1 does not contain an inventive concept which transforms the claim into patent-eligible subject matter. According to Apple, the claim recites "well-understood, routine, and conventional activities commonly used in the industry." (Dkt. No. 34 at 21.) Apple, for example, contends the "decryptor" and "controller" elements of claim 1

---

[2] Consistent with the statements above, this part of the Report and Recommendation does not apply to claim 2 of the '635 patent. The eligibility of claim 2 of the '635 patent is deferred until summary judgment.

would have been "standard," "conventional," and "well-known in the art" at the time of invention. (Dkt. No. 34 at 21.)

Claim 1 of the '635 patent describes:

> 1. A method for controlling the decryption of encrypted programming at a subscriber station, said method comprising the steps of:
>> receiving encrypted digital programming, said encrypted digital programming having an encrypted digital control signal;
>> detecting said control signal;
>> passing said control signal to a decryptor that decrypts encrypted digital data at said subscriber station;
>> decrypting said control signal;
>> decrypting said encrypted digital programming to form decrypted programming based on said control signal; and
>> presenting said decrypted programming to a viewer or listener.

('635 patent col. 285, l. 59–col. 286, l. 7.)

The Court finds the elements of claim 1 show that the claim is directed to a method of using a "control signal" associated with "digital programming" to "decrypt programming" "based on" the "control signal." ('635 patent col. 285, ll. 62–64; col. 286, ll. 3–4.) The Court finds that claim 1 is not directed to "converting information from one format to another." (Dkt. No. 34 at 17.)

The words in claim 1 show that it is directed to a method of using a "control signal" associated with "digital programming" to "decrypt programming" "based on" the "control signal." _First_, the preamble of the claim states the claim is directed to "a method for controlling the decryption of encrypted programming." The word "controlling" suggests the invention as a whole is directed to "controlling" operations including decryption. _Second_, and relatedly, the elements of the claim show that the "control signal" is what allows a practitioner of the method

to "control" decryption. The claim recites the "control signal" in five of six steps. Furthermore, all five of the steps describe operations on the "control signal." Step one recites receiving the "control signal. Step two recites detecting the "control signal." Step three says to pass the "control signal" to a decryptor. Step four states the "control signal" is decrypted. Finally, step five recites decrypting "digital programming" "based on" the "control signal." Because all of the key elements in claim 1 address a "control signal" the Court finds that claim 1 is directed to using a "control signal" associated with "encrypted digital programming" to generate "decrypted programming" "based on" the "control signal."

Having found that claim 1 is directed to using a "control signal" associated with "digital programming" to "decrypt programming" "based on" the "control signal," the Court finds that claim 1 is not directed to an abstract idea under step one of *Mayo*. Instead, the claim and the specification show that using a "control signal" to control decryption improves the way in which "encrypted digital programming" is delivered. The '635 patent states that "control signals" can improve the delivery of "encrypted digital programming" in at least two ways.

*First*, claim 1 teaches that a "control signal" should be transmitted with the "digital programming." The '635 patent states that transmitting a "control signal" with the programming enhances the reliability of its delivery. According to the patent, a "control signal" that is sent with the programming "cannot become separated inadvertently from the programming and, thereby, inhibit automatic processing. [The signal can] occur at precise times in programming and can synchronize the operation of receiver station apparatus to the timing of programming transmission." ('635 patent col. 7, ll. 51–56.) That suggests sending a "control signal" with the programming allows for greater reliability which, in turn, increases the processes a "control signal" can control.

*Second*, the claim states that the "digital programming" should be decrypted "based on" the "control signal." The specification suggests decrypting "digital programming" "based on" the "control signal" is one way to make a receiving device automatically decrypt transmitted data. For example, the specification states that a receiving device can be preprogrammed with the information needed to decrypt data. The receiving device can then be designed so that when it receives a "control signal," it responds by "automatically [] execut[ing] a decryption sequence at signal processor, 200, that is fully automatic and for which all apparatus are preprogrammed." ('635 patent col. 75, ll. 18–22; *see* '635 patent col. 75, ll. 23–45.) *See, e.g.*, *Enfish*, 822 F.3d at 1337 ("[O]ur conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."). In sum, the Court finds that claim 1 of the '635 patent is directed to using a "control signal" associated with "digital programming" to "decrypt programming" "based on" the "control signal." Accordingly, the Court further finds that this is not an abstract idea under *Mayo* step 1 and that Apple has not shown the claims in the '635 patent are patent-ineligible under § 101.

Even if claim 1 was directed at an abstract idea such as "converting information from one format to another," the Court finds the additional elements of the claim would transform the claim into a patent-eligible application of that idea. *See Alice*, 134 S. Ct. at 2355. Principally, the Court finds that the elements of the claim are arranged in a way that Apple has not shown is conventional or generic.

The parties should agree that claim 1 of the '635 patent lists several conventional or generic elements. "Digital programming," "encryption," and "decryption" all existed before the

priority date of the '635 patent. Furthermore, the claim contains elements, like "control signal," that may or may not have existed before the claimed invention was conceived. PMC and Apple do not seek a construction for "control signal." So the Court just notes as a general matter that a "control signal" can be described as a signal that is used to direct "computers to generate and transmit programming" or used to direct "receiver apparatus to operate on the basis of programming and information received at widely separated times." (*See* '635 patent col. 6, ll. 40–46.)

Apple has not shown why the conventional and generic claim elements described above must be arranged as they are recited in claim 1 of the '635 patent. Apple has not shown that it is conventional or generic to transmit and receive "encrypted digital programming having an encrypted digital control signal." Likewise, Apple has not shown that "decrypting" "encrypted digital programming" to form "decrypted programming" must always be "based on" a "control signal." As the Federal Circuit held in *Bascom*, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs. v. AT&T Mobility LLC*, Case No. 2015-1763, 2016 WL 3514158, at *6 (Fed. Cir. Jun. 27, 2016).

### 2.    The '091 patent

Apple asserts that claim 13 represents all of the claims in the '091 patent. Apple contends claim 13 is directed to the abstract idea of "converting information from one format to another, *i.e.*, decrypting information." Apple asserts the claim "focuses on the abstract idea of decrypting encrypted information, rather than the physical system or the specific software that processes and decrypts the information." (Dkt. No. 34 at 18–19.)

Furthermore, Apple contends that claim 13 does not recite an inventive concept because it includes steps like "receiving," "detecting," and "passing" a signal. Those steps were known in the art before the priority date of the '091 patent. (Dkt. No. 34 at 22.) Apple also notes that before the priority date, "determining" and "locating" a decryption key was known in the art. (Dkt. No. 34 at 23.)

Claim 13 of the '091 patent recites:

> 13. A method of decrypting programming at a receiver station, said method comprising the steps of:
>> receiving an encrypted digital information transmission including encrypted information;
>> detecting in said encrypted digital information transmission the presence of an instruct-to-enable signal;
>> passing said instruct-to-enable signal to a processor;
>> determining a fashion in which said receiver station locates a first decryption key by processing said instruct-to-enable signal;
>> locating said first decryption key based on said step of determining;
>> decrypting said encrypted information using said first decryption key; and
>> outputting said programming based on said step of decrypting.

('091 patent col. 285, l. 61–col. 286, l. 9.)

The Court finds the elements of claim 13 show that the claim is directed to a method of using an "instruct-to-enable signal" included in "digital information" to locate a "decryption key" that can decrypt "encrypted information." ('091 patent col. 285, l. 61–col. 286, l. 9.) The Court finds that claim 13 is not directed to "converting information from one format to another." (Dkt. No. 34 at 17.)

The words in claim 13 show the claim is directed to a method of using an "instruct-to-enable signal" included in "digital information" to locate a "decryption key" that can decrypt "encrypted information." Claim 13 directly recites an "instruct-to-enable signal" in three of its

14

seven steps and implicitly recites to an "instruct-to-enable signal" in two more steps. Steps two, three, and four recite operations related to the "instruct-to-enable signal." Step two says to detect the "instruct-to-enable signal." Step three says to pass the "instruct-to-enable signal." Step four requires processing the "instruct-to-enable signal" so that the "receiver station" can locate "a first decryption key."

Furthermore, steps one and five implicitly recite an "instruct to enable signal." Step one requires "receiving an encrypted digital information transmission." This "receiving" step, by implication, includes "receiving" an "instruct-to-enable signal" because the next step, step two, requires the "instruct-to-enable signal" be "detected" in "said encrypted digital information transmission." Step five also implicitly includes an "instruct to enable signal." The step recites "locating said first decryption key based on said step of determining." The phrase "said step of determining" refers back to step four which recites "[d]etermining a fashion in which [a] receiver station locates a first decryption key by processing said instruct-to-enable signal." The Court thus finds the key elements in claim 13 recite operations related to the "instruct-to-enable signal." The claim is directed to using an "instruct-to-enable signal" in "digital information" to "determine a fashion" in which a station "locates" a "decryption key" that can then be used to decrypt "encrypted information."

The Court finds that claim 13 is directed to using an "instruct-to-enable signal" included in "digital information" to "determine a fashion" in which a station "locates" a "decryption key" that can decrypt "encrypted information." The Court further finds that the claim is not an abstract idea under step one of *Mayo*. Instead, claim 13 describes an improvement to the delivery of "instruct-to-enable signals" and a technical way to decrypt transmitted information.

*First*, claim 1 teaches the "instruct-to-enable signal" should be "in" the "encrypted digital information transmission." Like the "control signal" of the '635 patent, the '091 patent says that transmitting the "instruct-to-enable signal" in the "information transmission" improves the reliability of the signal's delivery. The patent states the improved delivery process increases the number of functions the "instruct-to-enable signal" can control because the signal can "occur at precise times in programming and can synchronize the operation of receiver station apparatus to the timing of programming transmission." ('091 patent col. 7, ll. 51–56.)

*Second*, the claim requires a "receiver station" that is able to "locate[] a first decryption key" by processing the "instruct-to-enable signal." The specification shows that decrypting "digital programming" "based on" the "control signal" can be a technical solution for causing a receiving device to decrypt a transmission. The '091 patent, for example, teaches an embodiment employing this solution. The embodiment states that the "instruct-to-enable" signal "causes controller, 20, to execute particular preprogrammed decrypt-with-J [(a decryption key titled "J")] instructions. Among said preprogrammed instructions is key information of J, and said instructions cause controller, 20, automatically to select and transfer said key information to decryptor, 10." ('091 patent col. 75, ll. 43–59.) *See, e.g.*, *Enfish*, 822 F.3d at 1337 ("[O]ur conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."). That passage teaches that an "instruct-to-enable signal" can cause a receiving device to run a routine that retrieves encryption key "J" and then transfer the key to the decryptor for further use. In sum, the Court finds that claim 13 of the '091 patent is directed to using an "instruct-to-enable signal" in "digital information" to "determine a fashion" in which a station

16

"locates" a "decryption key" that can decrypt "encrypted information." The Court finds this is not an abstract idea under *Mayo* step 1 and the '091 patent does not claim an abstract idea.

Even if claim 13 were directed to an abstract idea, the Court finds that the additional elements of the claim to transform it into a patent-eligible application of that idea. *See Alice*, 134 S. Ct. at 2355. Principally, the Court finds the elements of the claim are arranged in a way that Apple has not shown is conventional or generic.

As with the '635 patent Apple has pointed out that many of the elements of the claim were known in the art before the priority date of the '091 patent. Again, however, Apple has not shown why these elements must be arranged as they recited in claim 13. Apple has not shown it was conventional or generic to transmit and receive "an encrypted digital information transmission" with "an instruct-to-enable signal." Apple also has not shown that a "decryption key" should be located by "processing said instruct-to-enable signal." *See Bascom Glob. Internet Servs. v. AT&T Mobility LLC*, Case No. 2015-1763, 2016 WL 3514158, at *6 (Fed. Cir. Jun. 27, 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."). Because Apple has not shown claim 13 of the '091 patent fails to disclose an inventive concept, the Court finds that Apple has not shown the '091 patent is patent-ineligible.

### B.     The '649 patent

Apple says that claim 39 of U.S. Patent No. 7,752,649 (the "'649 patent") is directed to the abstract idea of "using information to decide which television program to display." (Dkt. No. 34 at 24.) Apple asserts that claim 39 amounts to taking information from a "message stream" and using it "to determine whether to process and display signals." (Dkt. No. 34 at 24–25.) Apple contends that claim 39 discloses no inventive concept. Apple says that "receiving," "detecting,"

and "inputting" a "message stream" into a control processor and using a controller to "select," communicate," and "compare" data represent well-understood and conventional processes. (Dkt. No. 34 at 26.)

Claim 39 recites:

> 39. A method of processing signals in a television receiver, said television receiver having a plurality of processors, said method comprising the steps of:
> receiving an information transmission including digital television signals and a message stream;
> detecting said message stream in said information transmission;
> inputting at least a first portion of said message stream to a control processor;
> selecting control information in said at least a first portion of said message stream and communicating said selected control information to at least one register memory;
> comparing stored function invoking data to the contents of said at least one register memory;
> inputting said digital television signals to said plurality of processors on the basis of one or more matches;
> processing of said digital television signals simultaneously at two or more of said plurality of processors; and displaying television programming included in said digital television signals.

('649 patent col. 290, l. 51–col. 291, l. 4.)

The Court finds that claim 39 is directed to a method of using "control information" from a "message stream" to control the input of "digital television signals" to two or more processors. Furthermore, claim 13 states the signals should be processed "simultaneously." ('649 patent col. 290, l. 51–col. 291, l. 4.)

The Court finds that claim 39 is directed to a method of using "control information" from a "message stream" to control the input of signals. Six of the seven steps in claim 39 are focused on identifying and processing the "control information" to direct signal processing. The first

three steps of the claim describe how the "control information" is delivered. The steps state the "control information" is delivered as part of a "message stream." The fourth step describes selecting the "control information" from the "message stream" for storage in memory. The fifth step states the "control information" should be "compared" to information in the memory. Finally, the sixth step says if the "control information" matches the information in the memory, the receiving device should input two or more received digitals into two or more processors. All of these steps are focus on delivering and using the "control information." Thus, the Court finds that claim 39 is directed to using "control information" to control the input of "digital television signals" into two or more processors.

The Court finds that using "control information" to control the input of "digital television signals" is not an abstract idea but a technological way of remotely directing the input of "digital television signals" into two or more processors. For example, claim 39 could describe the use of a receiving device that receives "digital television signals" and a "message stream." The device could then use the "control information" in the "message stream" to cause the input of the "digital television signals" into two processors in the receiving device. The processors could each process part of the "digital television signals" and display the content transmitted in the "digital television signals" at the conclusion of processing. Processing "digital television signals" in this specific manner does not describe an abstract idea and this mode of processing "signals" does not amount to "using information to decide which television program to display." Instead, it describes a technological method of remotely controlling how signal processing works in a receiving device. For this reason, the Court finds that claim 39 of the '649 patent is not directed at an abstract idea.

19

Even if claim 39 were directed to an abstract idea the Court finds the additional elements of the claim to transform it into a patent-eligible application of that idea. *See Alice*, 134 S. Ct. at 2355. The Court finds the elements of claim 39 are arranged in a way that Apple has not shown is conventional or generic.

The parties would agree that all of the components described in the '649 patent, such as a "control processor" or "memory," were well-known in the art before the priority date of the '649 patent. The parties could also probably agree that a combination of bits that could generate a "digital television signal" or something similar to "control information" were known in the art before the priority date.

However, that does not mean combining the elements so that a user can use "control information" in a "message stream" to remotely direct "digital television signal" processing is not an inventive concept. The language of claim 39 shows the claim is directed to only this method of remotely controlling "digital television signal" processing. This method differs from other possible methods of controlling "digital television signal" processing. For example, a user, instead of using the method of claim 39 to control processing in a receiving device, could preprogram a receiving device with processing instruction or send the "control information" separately from the "digital television signals." (*See* '649 patent col. 3, ll. 1–5 ("This prior art is limited. It only transmits data; it does not control data processing. No system is preprogrammed to simultaneously control a plurality of central processing units, operating systems, and pluralities of computer peripheral units."); *Bascom Glob. Internet Servs. v. AT&T Mobility LLC*, Case No. 2015-1763, 2016 WL 3514158, at *6 (Fed. Cir. Jun. 27, 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."). For this reason, the Court finds claim 39 of the '649 patent discloses an

20

inventive concept under step two of *Mayo* and does not claim an abstract idea that is patent-ineligible under § 101.

### C.      The '088 patent

Apple contends that claim 14 of U.S. Patent No. 8,752,088 (the "'088 patent") is directed to the abstract idea of "monitoring how information is used." (Dkt. No. 34 at 24.) Apple asserts claim 14 recites using fundamental computing components programmed to perform well-known steps on a signal. (Dkt. No. 34 at 25.) Apple contends that the claim does not recite an inventive concept because the claim recites "input ports," an "output port," and a "processor" all of which are "well-understood and conventional elements that provide no inventive concept." (Dkt. No. 34 at 26.)

Claim 14 recites:

> 14. A multimedia receiving apparatus for gathering information on use of signals comprising:
>> a plurality of input ports for receiving multimedia signals;
>> an output port;
>> a processor operatively connected to said plurality of input ports and said output port;
>> said processor programmed for:
>> identifying a signal from at least one of said plurality of input ports;
>> passing said signal from said processor to said output port, wherein a way the signal is passed from said output port is based on said step of identifying;
>> communicating information on a use of said identified signal, wherein the use of said identified signal comprises information of the passing of said identified signal based on said step of passing.

('088 patent col. 285, ll. 42–57.)

The Court finds that claim 14 is directed to an apparatus programmed so that "a way the signal is passed" is based on the signal. The apparatus also communicates information on how the signal should be used. ('088 patent col. 285, ll. 42–57.) The words of claim 14 show that the

claim is directed to this apparatus because the main elements of the claim focus on the programming of the "processor." The three most descriptive elements of the claim recite operations the processor performs on a signal. Specifically, the claim states the processor is programmed such that "a way the signal is passed" is based on the signal. The claim also states that the processor is programmed to communicate information on how the signal should be used. The input and output port elements are not central to the claim. They describe only how the signal is received and sent to the processor for use.

The Court finds that claim 14 does not describe an abstract idea because, as stated above, it recites an apparatus that is programmed to pass, and use, a signal in specific ways. The Court further finds this describes a technological way of processing signals because it describes specific traits that the processor looks at to determine how to operate on the signal.[3] For this reason, the Court finds that claim 14 of the '088 patent does not recite an abstract idea under step one of *Mayo*.

The Court also finds that PMC has shown claim 14 recites an inventive concept. PMC asserts that "[i]t was not conventional or routine in 1981 to transmit or receive digital multimedia content via computer networks or communicate signal usage information at the time." (Dkt. No. 83 at 30.) Apple responds to this by noting that all of the components in the claim are "generic computing components" and the claim does not recite any digital information elements. (Dkt. No. 88 at 9.)

The Court finds on a motion to dismiss, all disputed facts need to be viewed in the light most favorable to the plaintiff. Thus, the Court accepts PMC argument that the way in which the "processor" of claim 14 is programmed causes it to be a "very specific, concrete multimedia

---

[3] The Court notes that it is unclear as how the use of a signal can "comprise[] information."

receiving apparatus configured . . . to receive and process content in multiple media formats and communicate information on what programming is used." (Dkt. No. 83 at 30.) The Court accepts PMC's argument because claim 14 is clearly directed to how the "processor" uses the recited signals. Apple has not shown that the way in which the "processor" is programmed to use the signals is generic or conventional. For example, Apple has not shown that a signal always need to be passed based on how it is identified or that a signal need to be used based on "information of the passing of said identified signal." For these reasons, the Court finds that claim 14 of the '088 patent is not directed at an abstract idea.

## CONCLUSION

In conclusion, the Court **RECOMMENDS** that Apple's Motion to Dismiss (Dkt. No. 14, 34.) be **DENIED** as to the issue of collateral estoppel. The Delaware court's ruling on the '304 patent does not prevent PMC from asserting that claim 1 of the '635 patent and claim 13 of the '091 patent are patent-eligible under § 101. The Court further finds that it more prudent to defer the issue of the effect of collateral estoppel on claim 2 of the '635 patent until summary judgment. Thus, the Court **RECOMMENDS** that the parts of Apple's Motion to Dismiss (Dkt. No. 14, 34) which pertain to claim 2 of the '635 patent be **DENIED** for only this reason. Finally, the Court **RECOMMENDS** that Apple's Motion to Dismiss (Dkt. No. 14, 34) be **DENIED** as to claim 1 of the '635 patent, claim 13 of the '091 patent, claim 39 of the '649 patent, and claim 14 of the '088 patent. The Court finds Apple has not shown these claims are ineligible under § 101. Apple has not shown these claims are directed to an abstract idea and fail to disclose an inventive concept.

A party's failure to file written objections to the recommendations, findings, and conclusions in this report by **SEPTEMBER 27, 2016** shall bar that party from *de novo* review

by the district judge of those recommendations, findings, and conclusions, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    **SIGNED this 13th day of September, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

24

Appendix A

| Comparison of PMC Claims At Issue in *Amazon* (D. Del.) and *Apple* (E.D. Tex.) | |
|---|---|
| **Invalidated Claim 1 of the '304 patent (asserted against Amazon)** | **Claim 1 of the '635 patent (asserted against Apple)** |
| 1. A method for controlling the decryption of programming at a subscriber station, said method comprising the steps of: | 1. A method for controlling the decryption of **encrypted** programming at a subscriber station, said method comprising the steps of: |
| receiving programming, said programming having a first encrypted digital control signal portion and an encrypted digital information portion; | receiving **encrypted digital** programming, said **encrypted digital** programming having an encrypted digital control signal; |
| detecting said first encrypted digital control signal portion of said programming; | detecting said control signal; |
| passing said first encrypted digital control signal portion of said programming to a decryptor at said subscriber station; | passing said control signal to a decryptor **that decrypts encrypted digital data** at said subscriber station; |
| decrypting said first encrypted digital control signal portion of said programming using said decryptor at said subscriber station; | decrypting said control signal; |
| passing said encrypted digital information portion of said programming to said decryptor; | |
| decrypting said encrypted digital information portion of said programming using said decryptor at said subscriber station based on the decrypted control signal portion; and | decrypting said encrypted digital programming **to form decrypted programming** based on said control signal; and |
| presenting said programming. | presenting said **decrypted** programming **to a viewer or listener**. |

(Dkt. No. 34-2)

| Comparison of PMC Claims At Issue in *Amazon* (D. Del.) and *Apple* (E.D. Tex.) | |
|---|---|
| **Invalidated Claim 1 of the '304 patent (asserted against Amazon)** | **Claim 2 of the '635 patent (asserted against Apple)** |
| 1. A method for controlling the decryption of programming at a subscriber station, said method comprising the steps of: | 2. A method for controlling the decryption of programming at a subscriber station, said method comprising the steps of: |
| receiving programming, said programming having a first encrypted digital control signal portion and an encrypted digital information portion; | receiving programming, said programming having a first encrypted digital control signal portion and an encrypted digital information portion; |
| detecting said first encrypted digital control signal portion of said programming; | detecting said first encrypted digital control signal portion of said programming; |
| passing said first encrypted digital control signal portion of said programming to a decryptor at said subscriber station; | passing said first encrypted digital control signal portion of said programming to a **first** decryptor at said subscriber station; |

| | |
|---|---|
| decrypting said first encrypted digital control signal portion of said programming using said decryptor at said subscriber station; | decrypting said first encrypted digital control signal portion of said programming using said **first** decryptor at said subscriber station; |
| passing said encrypted digital information portion of said programming to said decryptor; | passing said encrypted digital information portion of said programming **and the decrypted control signal portion to a second decryptor at said subscriber station**; |
| decrypting said encrypted digital information portion of said programming using said decryptor at said subscriber station based on the decrypted control signal portion; and | decrypting said encrypted digital information portion of said programming using said **second** decryptor at said subscriber station based on the decrypted control signal portion; and |
| presenting said programming. | presenting said programming. |

(Dkt. No. 34 at 11–12.)

| Comparison of PMC Claims At Issue in *Amazon* (D. Del.) and *Apple* (E.D. Tex.) | |
|---|---|
| **Invalidated Claim 1 of the '304 patent (asserted against Amazon)** | **Claim 13 of the '091 patent (asserted against Apple)** |
| 1. A method for controlling the decryption of programming at a subscriber station, said method comprising the steps of: | 13. A method of decrypting programming at a receiver station, said method comprising the steps of: |
| receiving programming, said programming having a first encrypted digital control signal portion and an encrypted digital information portion; | receiving an encrypted digital information transmission including encrypted information; |
| detecting said first encrypted digital control signal portion of said programming; | detecting in said encrypted digital information transmission the presence of an instruct-toenable signal; |
| passing said first encrypted digital control signal portion of said programming to a decryptor at said subscriber station; | passing said instruct-to-enable signal to a processor; |
| decrypting said first encrypted digital control signal portion of said programming using said decryptor at said subscriber station; | determining a fashion in which said receiver station locates a first decryption key by processing said instruct-to-enable signal; |
| passing said encrypted digital information portion of said programming to said decryptor; | locating said first decryption key based on said step of determining; |
| decrypting said encrypted digital information portion of said programming using said decryptor at said subscriber station based on the decrypted control signal portion; and | decrypting said encrypted information using said first decryption key; and |
| presenting said programming. | outputting said programming based on said step of decrypting. |

(Dkt. No. 34 at 14.)

26