## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **PERSONALIZED MEDIA COMMUNICATIONS, LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:15-cv-01366-JRG-RSP** |
| | ) | |
| **APPLE INC.,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## PERSONALIZED MEDIA COMMUNICATIONS, LLC'S
## MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF
## <u>ANTHONY J. WECHSELBERGER BASED ON DAUBERT</u>

## TABLE OF CONTENTS

**Page**

I.     Introduction ........................................................................................................... 1

II.    Background .............................................................................................................. 2

    A.   The Wechselberger Report Applies the Incorrect Claim Construction Standard ............................................................................................................4

    B.   Mr. Wechselberger's Report Relies On A Construction of "Decryption" Rejected by the Court in its Claim Construction Order and the Wechselberger Report Fails to Apply the Court's Claim Construction Order ...........5

    C.   Conclusory Assertions in Mr. Wechselberger's Report ............................................7

III.   Argument .............................................................................................................. 8

    A.   The Court Should Strike Portions of Mr. Wechselberger's Report That Apply the Incorrect Claim Construction Standard........................................................9

    B.   The Court Should Strike Portions of Mr. Wechselberger's Report That Depend on an Improper Construction of the "Decrypting" Terms...........................11

    C.   The Court Should Strike Portions of Mr. Wechselberger's Report Relating to the Alleged Oak ORION, Oak Sigma and VideoCipher "Systems." ...................12

IV.    Conclusion .............................................................................................................. 15

# TABLE OF AUTHORTIES

**Page(s)**

**Cases**

*BMC Software, Inc. v. Servicenow, Inc.*,
  2016 WL 367251 (E.D. Tex. Jan. 28, 2016) ............................................................. 11

*Burleson v. Tex. Dep't. Crim. Justice*,
  393 F.3d 577 (5th Cir. 2004) ....................................................................................... 9

*Curtis v. M & S Petroleum, Inc.*,
  174 F.3d 661 (5th Cir. 1999) ....................................................................................... 9

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993) ................................................................................... 9, 11, 12, 15

*Elder v. Tanner*,
  205 F.R. D 190 (E.D. Tex. 2001) ................................................................................. 8

*Eolas Tech., Inc. v. Adobe Sys., Inc.*, et al.,
  6:09-cv-00446-LED (E.D. Tex. February 6, 2012) .................................................... 13

*Finnigan Corp. v. Int'l Trade Comm'n*,
  180 F.3d 1354 (Fed. Cir.1999) .............................................................................. 13, 15

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136, 118 S. Ct. 512 (1997) ........................................................................... 9

*In re CSB-Sys. Int'l, Inc.*,
  832 F.3d 1335, 1341 (Fed. Cir. 2016) ....................................................................... 10

*Johnson v. Arkema, Inc.*,
  685 F.3d 452 (5th Cir. 2012) ....................................................................................... 9

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
  292 F.3d 728 (Fed. Cir. 2002) .............................................................................. 13, 14

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) .............................................................................. 11, 12

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ................................................................................. 11, 12

*Moore v. Ashland Chem., Inc.*,
  151 F.3d 269 (5th Cir. 1998) ....................................................................................... 9

*Neutrino Development Corp. v. Sonosite*, *Inc.*,
  410 F.Supp.2d 529 (S.D. Tex. 2006) ......................................................................... 15

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ....................................................................... 1, 10, 11

*Sierra Club v. Cedar Point Oil Co. Inc.*,
  73 F.3d 546 (5th Cir. 1996) ......................................................................................... 8

*Space Maker Designs, Inc. v. Weldon F. Stump & Co., Inc.,*
2003 WL 21805274 (N.D. Tex. 2003) ...................................................................................... 8

*Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.,*
143 U.S. 275 (1892) .............................................................................................................. 13

**Rules**

37 C.F.R. § 200 ........................................................................................................................... 10

37 C.F.R. § 300 ........................................................................................................................... 10

37 C.F.R. § 42.100 ...................................................................................................................... 10

F.R.C.P. 26.............................................................................................................................. 8, 12

Fed. R. Evid. 702 ................................................................................................................. 1, 9, 11

## I.    INTRODUCTION

Pursuant to Rule 702 of the Federal Rules of Evidence, and the Federal Rules of Civil Procedure, Plaintiff Personalized Media Communications, LLC ("PMC") moves to strike portions of defendant Apple Inc.'s ("Apple") expert report by Anthony J. Wechselberger ("Wechselberger Report", excerpts attached as Ex. A) regarding certain invalidity theories that rely upon: i) the incorrect claim construction standard, ii) claim constructions that contradict the Court's Claim Construction Order; and iii) the Oak ORION, Oak Sigma, and VideoCipher systems.

First, the Wechselberger Report improperly applies the incorrect claim construction standard used by the Patent Trial and Appeal Board ("PTAB").  In particular, the Wechselberger Report incorporates by reference invalidity opinions that Mr. Wechselberger previously set forth in support of Apple's Petitions for *Inter Partes* Review before the PTAB.  In these declarations, Mr. Wechselberger applied the PTAB's "broadest reasonable interpretation" ("BRI") standard, a standard that is different than the *Phillips* standard that applies in district courts.  Ex. A ¶¶ 120-159, 346-376, 501-524.[1]

Second, the Wechselberger Report relies upon constructions of claim terms that are in direct contradiction with the Court's Claim Construction Order.  D.I. 246.  This Court, in its Claim Construction Order, expressly rejected Apple's argument that the "decrypting" terms encompass descrambling of analog information.  And yet, Mr. Wechselberger plainly admits that he uses the term "decrypting" "***interchangeably***" with "descrambling."  Ex. A ¶ 113.  Mr. Wechselberger  improperly applies this incorrect claim construction in concluding that at least seven prior art references and combinations invalidate the claims of the patents-in-suit, despite

---

[1] Ex. B ¶ 7 ("I understand that claims in an IPR are given their broadest reasonable interpretation in view of the patent specification and the understanding of one having ordinary skill in the relevant art."); Ex. C ¶ 7 (same); Ex. D ¶ 7 (same).

the fact that they do not decrypt digital data, and only descramble analog signals.  Ex. A ¶¶ 187-188, 295-337; Ex. B ¶¶ 111-271; Ex. C. ¶¶ 228-324; Ex. D ¶¶ 205-219.[2]

Finally, the Wechselberger Report sets forth theories of invalidity based on the alleged Oak ORION, OAK Sigma, and VideoCipher "systems," without ever providing evidence that these so-called "systems" were publicly known, used or on sale prior to the applicable priority dates of the patents-in-suit.  Ex. A ¶¶ 206, 251, 295, 525, 620, 891, 932.  Furthermore, Mr. Wechselberger's theories of invalidity based on these systems rely upon bare conclusory statements.  Mr. Wechselberger determines that these systems invalidate the patents-in-suit based on sets of disparate, confidential, and forward-looking documents that often describe entirely different products, and none of which describe a single, unitary system with the claimed functionalities.  The Court should strike Mr. Wechselberger's unsubstantiated and unreliable testimony regarding these systems.  Ex. A ¶¶ 206-337, 525-709, 881-981.

Accordingly, PMC respectfully moves to strike paragraphs 120-159, 187-188, 206-337, 346-376, 501-524, 525-709, and 881-981 of the Wechselberger Report.

## II.     BACKGROUND

PMC brought suit against Apple, asserting infringement of U.S. Patent Nos. 8,191,091; 8,559,635; and 7,752,649 (collectively "the patents-in-suit").[3]

In March and July 2016, Apple filed with the Patent Trial and Appeal Board petitions for *inter partes* review ("IPR") against each of the patents-in-suit.  Mr. Wechselberger filed declarations in support of three of Apple's petitions for IPRs, including declarations in support of Apple's petition for IPR of the '091 Patent (dated March 14, 2016), Apple's first petition for IPR of the '635 Patent (dated March 14, 2016), and Apple's second petition for IPR of the '635

---

[2] S*ee also* Ex. A ¶¶ 120-159, 363-376, 521-523 (incorporating opinions set forth in Exs. B-D).
[3] The parties are negotiating a stipulation of dismissal regarding U.S. Patent No. 8,752,088.

patent (dated July 30, 2016) (collectively, the "Wechselberger IPR Declarations") (excerpts attached as Exs. B-D).

On June 28, 2016, the Court issued its preliminary claim construction order. Ex. E.

On October 10, 2016, after the close of fact discovery, Apple submitted the Wechselberger Report, in which Mr. Wechselberger sets forth opinions that certain prior art references anticipate or render obvious the asserted claims of the patents-in-suit. As part of his report, Mr. Wechselberger incorporates by reference the opinions he set forth in the Wechselberger IPR Declarations, which rely on the BRI standard. Further, Mr. Wechselberger relied on the Court's preliminary claim construction for "decrypting," "decryption," "decryption key," and "encrypted," and he did not address PMC's proposed construction (ultimately adopted by the Court) in his Report. Ex. A ¶ 64; Wechselberger Deposition, Ex. F at 38:6-14. Mr. Wechselberger and Apple deliberately chose to proceed in this manner even though they were aware that PMC proposed during claim construction to construe these terms to require a digital key and digital data. Ex. F at 38:6-39:23. On October 25, 2016, the Court issued its Claim Construction Order that construed, among other terms, "decrypting," "decryption," "decryption key" and "encrypted" to require that these processes involve *digital* data and a *digital* key. The Court construes the terms as follows:

- *"decrypting" and "decryption" means "a method that uses a **digital key** in conjunction with an associated algorithm to decipher (render intelligible or usable) **digital data**"*

- *"decryption key" means "**digital data** used by a device or method in conjunction with an associated algorithm to decipher (render intelligible or usable) encrypted **digital information**"*

- *"encrypted" means "an operation performed on **digital data** in conjunction with an associated algorithm and **digital key** to render the **digital data** unintelligible or unusable"*

D.I. 246 at 17-18. The Court, in particular, rejected Apple's proposed construction which would

3

construe these terms to encompass "descrambling" and "scrambling," and enciphering and deciphering of *analog* data. *Id.* at 16-28.

### A.    The Wechselberger Report Applies the Incorrect Claim Construction Standard

As part of his report, Mr. Wechselberger incorporated by reference from the Wechselberger IPR Declarations his opinions regarding the following theories of invalidity:

- invalidity opinions from IPR2016-0755 alleging that Claims 13-16, 18, 20, 21, 23, and 24 of the '091 Patent are invalid over Gilhousen (Ex. A ¶¶ 123-132);

- invalidity opinions from IPR2016-0755 alleging that Claims 13-16, 18, 20, 21, 23, and 24 of the '091 Patent are invalid over Mason (Ex. A ¶¶ 136-145);

- invalidity opinions from IPR2016-0755 alleging that Claims 26, 27, and 30 of the '091 Patent are invalid over Frezza, alone or in view of Block (Ex. A ¶¶ 149-152);

- invalidity opinions from IPR2016-0755 alleging that Claims 26, 27, and 30 of the '091 Patent are invalid over Kelly, alone or in view of Block (Ex. A ¶¶ 156-159);

- invalidity opinions from IPR2016-0754 alleging that Claims 3, 4, 7, 13, 18, 20-21, 28-30, 32, and 33 of the '635 Patent are invalid over Guillou (Ex. A ¶¶ 348-362);

- invalidity opinions from IPR2016-0754 alleging that Claims 3, 4, 7, 18, 20-21, 28-30, and 33 of the '635 Patent are invalid over Aminetzah, alone or in view of Bitzer (Ex. A ¶¶ 366-376);

- invalidity opinions from IPR2016-01250 alleging that Claims 13, 18, 20, 32 and 33 of the '635 Patent are invalid over Chandra (Ex. A ¶¶ 504-509);

- invalidity opinions from IPR2016-01250 alleging that Claims 4, 7, 21, and 28-30 of the '635 Patent are invalid over Seth-Smith (Ex. A ¶¶ 512-520); and

- invalidity opinions from IPR2016-01250 alleging that Claim 3 of the '635 Patent is invalid over Campbell (Ex. A ¶¶ 523-524).

For each of these invalidity theories, Mr. Wechselberger applied the PTAB's claim construction standard, which requires construing the claims according to the broadest reasonable interpretation (BRI). *See, e.g.*, Ex. B ¶ 7 ("I understand that claims in an IPR are given their broadest reasonable interpretation in view of the patent specification and the understanding of one having ordinary skill in the relevant art."); Ex. C ¶ 7 (same); Ex. D ¶ 7 (same).

4

**B.      Mr. Wechselberger's Report Relies On A Construction of "Decryption" Rejected by the Court in its Claim Construction Order and the Wechselberger Report Fails to Apply the Court's Claim Construction Order**

In setting forth theories of invalidity against the claims of the patents-in-suit, Mr. Wechselberger states that he applied the Court's preliminary claim construction.  Ex. A ¶¶ 64, 123, 136, 149, 156, 348, 366.  The Wechselberger Report, however, applies the incorrect claim construction for "decrypting," "decryption," "decryption key" and "encrypted," terms (collectively "decrypting terms") that appear in the claims of '091 Patent and the '635 Patent. Mr. Wechselberger applied a construction of these terms that encompassed descrambling and scrambling, specifically: "a method that uses a key in conjunction with an associated algorithm to decipher (render intelligible or usable) data," in direct contradiction to the Claim Construction Order.  Ex. A at ¶ 64.  At the outset of his report, Mr. Wechselberger makes unequivocally clear that he treats decrypting to encompass descrambling, despite the fact that they are two entirely distinct technical procedures stating:

> Thus, in the sections that follow, I use the terms ***decrypting, decryption, etc. interchangeably with the terms descrambling, descramble, etc***.  That is, when I use the terms decrypt, decryption, etc., I mean to ***also include the concepts of analog descrambling*** …

Ex. A ¶ 113 (emphasis added); *see also* Ex. B ¶¶ 88, 113, 171, 229, 249 (same); Ex. C  ¶¶ 62, 65, 85 (same); Ex. D  ¶¶ 62, 65, 85 (same).  As a result, Mr. Wechselberger fails to apply the Court's construction of the "decrypting" terms when he rendered his opinions that the prior art invalidates the claims of the '091 Patent and the '635 Patent.

Throughout the Wechselberger Report, Mr. Wechselberger incorrectly finds that the prior art discloses, teaches, or suggests the "decrypting" limitations, even though, as he himself admits, the prior art only disclosed *descrambling* of *analog* signals.  Ex. F at 136:3-137:3 (admitting that the Court's narrower construction of "decrypting" impacts at least his invalidity

5

opinions based on the Gilhousen reference, VideoCipher system (Ex. A ¶¶ 295-337), Aminetzah

reference, and the Mason reference because they employ "analog descrambling.")  For example,

he applies the incorrect construction of the "decrypting" terms and incorrectly finds that the prior

art renders the claims of the patents-in-suit invalid in at least the following sections of his report:

- opinions that Gilhousen anticipates Claims 13-15, 18, 20, 23, and 24 of the '091 Patent; and Gilhousen and Block render obvious Claims 16 and 21 (Ex. B ¶¶ 111-168).  *See e.g.,* Ex. B, ¶¶ 97, 112 (stating that Gilhousen discloses "a method of decrypting programming at a receiver station" even though, as Mr. Wechselberger admits, Gilhousen "describes '[a] system and method for scrambling and selectively descrambling television signals that are transmitted to  subscribers' descramblers in a subscription television system'" and "Gilhousen describes that '[t]he descrambler signal processor 150 descrambles the scrambled television signal on line 152 in accordance with the unique keystream received on line 159 to provide a *descrambled* video signal on line 160'") (emphasis in original); ¶ 163 (Block describes that "the program can be unscrambled");

- opinions that Mason anticipates Claims 13-15, 18, 20, 23, and 24 of the '091 Patent; and Mason and Block render obvious Claims 16 of the '091 Patent (Ex. B ¶¶ 169-226).  *See e.g.,* Ex. B, ¶¶ 170, 174 (stating that Mason discloses "a method of decrypting programming at a receiver station" even though, as Mr. Wechselberger admits, Mason describes that "[t]he present invention relates to the broadcasting of a television signal in scrambled form and more particularly to *a system for enabling the scrambled television signal to be descrambled* by authorised viewers only." (emphasis in original) and "Mason also teaches '[a] conditional access system for transmitting and receiving scrambled television signals over-air'"); ¶ 163 (Block describes transmission of "television programs that are descrambled by the subscriber");

- opinions that Frezza anticipates Claims 26 and 30 of the '091 Patent; and Frezza and Block render obvious Claim 27 of the '091 Patent (Ex. B ¶¶ 227-246).  *See e.g.,* Ex. B, ¶¶ 228, 236 (stating that Frezza discloses "a method of decrypting programming at a receiver station" even though, as Mr. Wechselberger admits, "Frezza further describes that '[i]f the booter checksum and valid checksums match, *a descrambler is enabled to descramble the scrambled program signal*'" (emphasis in original) and "Frezza discloses 'decrypting said encrypted information by processing said enabling information'" because it describes that "descrambler 26 is enabled and scrambled programs which the subscriber is authorized to receive are descrambled for viewing."); ¶ 245 (Block and Frezza "both describe transmitting a program identification code with a scrambled television signal.");

- opinions that Kelly renders obvious Claims 26 and 30 of the '091 Patent; and Kelly and Block render obvious Claim 27 of the '091 Patent (Ex. B ¶¶ 248-271).  *See e.g.,* Ex. B, ¶¶ 248, 257 (stating that Kelly discloses "a method of decrypting programming

6

at a receiver station" even though, as Mr. Wechselberger admits, "Kelly describes that 'television signals are typically transmitted to system subscribers in a *scrambled form*' and that 'the decoder of a particular subscriber [is] authorized for *decoding or unscrambling the televised subscription programming signals in selected categories*'" (emphasis added); and Kelly discloses "decrypting said encrypted information by processing said enabling information," even though, as Mr. Wechselberger admits, it describes that "'[v]ideo unscrambler 18 is adapted for unscrambling the baseband subscription television signal such as, for example, by restoring horizontal sync thereto."); ¶¶ 269, 270 (Block describes transmission of "certain scrambled television programs" and "It would have been obvious to a person having ordinary skill in the art to combine Kelly and Block and modify Kelly so that if a program was *unscrambled*, Kelly stored the identification code for that program for later retrieval")(emphasis added);

- opinions that Aminetzah, alone or in view of Bitzer, renders obvious Claims 2, 4, 7, 13, 18, 20, 21, 28, 32, and 33 of the '635 Patent (Ex. C ¶¶ 228-324). *See, e.g.*, Ex. C ¶¶ 230, 269  (stating that Aminetzah meets the "decryption of encrypted programming" limitation, even though, as Mr. Wechselberger admits, the disclosed system performs "*descrambling*" of analog video programming and "Video signals in the Aminetzah pay TV system are scrambled.");

- opinions that Campbell renders obvious Claim 3 of the '635 Patent (Ex. D ¶¶ 205-219). *See, e.g.*, Ex. D ¶¶ 216, 206 (stating Campbell teaches or suggests "one or more second instruct signals which operate at the subscriber station to identify and decrypt" even though Campbell discloses codes (*e.g.*, "*descrambling* code 208") that control descrambling and "controlling the subscriber converter boxes to *descramble and output television programming* on a subscriber's TV set"); and

- opinion that Seth-Smith anticipates Claims 4 and 7 of the '635 Patent (Ex. A ¶¶ 187-188). *See, e.g.*, Ex. A at ¶ 111 (stating that Seth-Smith teaches "encrypted video" even though he concedes that the system performs "the descrambling of television programs at subscribers' converter boxes").

## C.    Conclusory Assertions in Mr. Wechselberger's Report

In paragraphs 206-337, 525-709, and 881-981 of the Wechselberger Report, Mr. Wechselberger relies on conclusory statements to justify assertions that the Oak ORION, Oak Sigma, and VideoCipher "systems" render certain claims of the patents-in-suit invalid.

Mr. Wechselberger does not cite to any documentary evidence that shows that these specific systems were publicly known, used or on sale prior to the priority dates of the patents-in-suit.  For example, Mr. Wechselberger offers no evidence corroborating his conclusion that

the alleged Oak Sigma "system" was publicly known, in public use or on sale "as early as May 1984" (Ex. A ¶¶ 251, 620, 932); or that the alleged VideoCipher "system" was publicly known, in public use or on sale by "at least as [sic] 1983" (Ex. A ¶ 295).  At his deposition, for instance, when asked his basis for concluding that the "M/A-COM developed the VideoCipher system, and [that] it [was] invented, known, offered for sale, and/or in public use at least as [early as] 1983," Mr. Wechselberger agreed that he was "relying on [his] own memory of something that happened over 20 years ago for supporting that statement."  Ex. F at 111:21-112:5.  Moreover, with respect to the evidence he relies upon to support his theories about the alleged "systems," Mr. Wechselberger admitted that the miscellaneous disparate documents were from different systems rather than a single version of a system as of a specific point in time and that the documents were all confidential rather than public.  Ex. F at 104:3-8 ("The information contained in a document like this would not be disclosed outside the company."); *see also id.* at 96:14-22; 98:11-21; 100:23-101:17; 107:6-17; 110:11-23; 107:21-24.

## III.    ARGUMENT

Expert reports must satisfy F.R.C.P. 26(a)(2)(B), which requires that expert reports contain a ***complete statement*** of all opinions to be expressed and the basis and reasons therefor . . . .'"  F.R.C.P. 26(a)(2)(B).  Courts interpret F.R.C.P. 26(a)(2)(B) to mean that "[e]xperts must give a factual predicate for their opinions in their reports." *Elder v. Tanner*, 205 F.R. D 190, 193 (E.D. Tex. 2001) (striking plaintiff's expert reports); *see also Sierra Club v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996); *Space Maker Designs, Inc. v. Weldon F. Stump & Co., Inc.*, 2003 WL 21805274 at *3 (N.D. Tex. 2003) (striking expert reports because they did not contain "complete statements").  As this Court has held, "[an] expert report[] must contain some discussion of [the expert's] reasoning and thought process that lead to [his] ultimate opinions." *See Elder*, 205 F.R. D. at 193.

8

In addition, Federal Rule of Evidence 702 permits the admission of opinion testimony from an expert only if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702.

"The relevance prong [of Daubert] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'"  *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  "The reliability prong [of Daubert] mandates that expert opinion 'be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief.'"  *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

It is the burden of the proponent to "prove by a preponderance of the evidence that the testimony is reliable."  *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).  Courts may exclude testimony when there is "too great an analytical gap between the data and the opinion proffered" and the expert relies on mere *ipse dixit* reasoning.  *Burleson v. Tex. Dep't. Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997)).

### A.   The Court Should Strike Portions of Mr. Wechselberger's Report That Apply the Incorrect Claim Construction Standard

The Court should strike portions of the Wechselberger Report that apply the incorrect claim construction standard.  It is axiomatic that district courts construe patent claims according to the principles the Federal Circuit articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.

9

Cir. 2005) (en banc).  Under *Phillips*, courts should construe claim terms according to "the meaning that [a] term would have to a person of ordinary skill in the art in question at the time of the invention."  *Id.* at 1313.  The PTAB applies a different standard that requires construing claim terms according to the "broadest reasonable construction in light of the specification of the patent in which it appears" (BRI standard).  37 C.F.R. § 42.100(b), 200(b), 300 (b) (2012).  As a result, the Federal Circuit has recognized that the patent system has two claim construction standards: (1) the BRI standard applied by the PTO in office proceedings; and (2) the *Phillips* standard used by district courts in actions involving validity and infringement.  *Phillips,* 415 F.3d at 1316-17; *In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016) (the PTAB uses the "broader" BRI standard).

Here, there is no question that Mr. Wechselberger's report incorporates by reference opinions from the Wechselberger IPR declarations where he rendered his invalidity opinions by applying the PTAB's BRI standard, rather than the correct *Phillips* standard that one must apply in the district courts.  *See, e.g.*, Ex. B ¶ 7 ("I understand that claims in an IPR are given their broadest reasonable interpretation in view of the patent specification and the understanding of one having ordinary skill in the relevant art."); Ex. C ¶ 7 (same); Ex. D ¶ 7 (same).[4]  Mr. Wechselberger testimony, based on the incorrect standard, is *not* "the product of reliable principles and methods" and by relying on the incorrect standard, Mr. Wechselberger, has *not* "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

---

[4] While in sections of his report in which he incorporates by reference the Wechselberger IPR Declarations, he states that he "appl[ies] the construction of claim terms offered in the current proceeding as they are set out in Section IV above," which lists the preliminary Claim Construction, he fails to explain how the opinions he set forth in those PTAB proceedings would differ if he had construed the claims according to the *Phillips* standard.  It is also inconceivable how Mr. Wechselberger could have applied the Court's preliminary claim construction of the claim terms in drafting the Wechselberger IPR Declarations since two out of three declarations were drafted and filed months before the Court's preliminary claim construction.

Apple made a decision to incorporate by reference analysis and opinions that Mr. Wechselberger proffered in proceedings before the PTAB, rather than properly performing an invalidity analysis pursuant to the *Phillips* standard as required in the district courts, and it did so understanding the risk.  Accordingly, the Court should strike the portions of the Wechselberger Report that incorporate by reference Mr. Wechselberger's opinions in the PTAB proceedings, and preclude Mr. Wechselberger from testifying regarding these invalidity theories.

**B.      The Court Should Strike Portions of Mr. Wechselberger's Report That Depend on an Improper Construction of the "Decrypting" Terms**

It is axiomatic that the meaning and scope of claim language is an issue of law for the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 984 (Fed. Cir. 1995).  It is not a proper subject of expert testimony at trial.  Because the Court has already rendered its construction of the claims of the patents at issue in this case, the Court should exclude any opinion testimony predicated on constructions that differ from those rendered by the Court.  *See, e.g., MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012); *BMC Software, Inc. v. Servicenow, Inc.*, 2:14-CV-903-JRG, 2016 WL 367251 at *2 (E.D. Tex. Jan. 28, 2016) (excluding, based Fed. R. Evid. 702 and *Daubert*, expert opinions based on "any construction that the Court previously considered and expressly rejected").

Here, it is indisputable that Mr. Wechselberger applies constructions of claim terms that are inconsistent with the Court's Claim Construction Order.  As the report and deposition transcript make plain, Mr. Wechselberger construes the "decrypting" terms to encompass *descrambling* of *analog signals*, rather than applying the Court's Claim Construction, which construes the "decrypting" terms to refer to methods that use a *digital* key in conjunction with an associated algorithm to decipher (render intelligible or usable) *digital data*.  *MarcTec*, 664 F.3d

11

at 913.[5]  The reason for Mr. Wechselberger's alternative construction is plain: Apple needs a construction that is broader than the Court's to support a number of invalidity theories that do not teach or suggest the "encryption" element of the claims.

Apple ignores the Court's Claim Construction Order and would have the jury apply Mr. Wechselberger's own, more favorable, construction of the patent claim terms, which would impermissibly transform claim construction into a question of fact for the jury, in contravention of Markman.  *Markman,* 52 F.3d at 984 ("[C]onstruing and determining the scope of the claims in a patent, is strictly a legal question for the court.").  Mr. Wechselberger's theories of invalidity fail to address the requirements of the Court's Claim Construction Order, and indeed, are directly contradictory to the Court's Order on the "decrypting" terms.  These opinions are inadmissible under *Daubert* and should be stricken because they rely upon unsound principles and methods. *MarcTec*, 664 F.3d at 913.[6]

> **C.**     **The Court Should Strike Portions of Mr. Wechselberger's Report Relating to the Alleged Oak ORION, Oak Sigma and VideoCipher "Systems."**

Sections of the Wechselberger Report regarding the Oak ORION, Oak Sigma and VideoCipher systems do not comply with the requirements of FRCP 26 (a)(2)(B), are inadmissible under *Daubert*, and should be stricken because the testimony therein is conclusory and lacks an adequate factual predicate.  Mr. Wechselberger fails to provide the factual basis for

---

[5] Mr. Wechselberger was aware that the constructions of the "decrypting" terms were in dispute and that PMC's proposed construction excluded descrambling of analog signals.  Yet, Mr. Wechselberger did not provide any alternate opinions in his Expert Report based on PMC's construction, as he admitted during deposition.  Ex. F at 38:6-14.

[6] Even in sections where Mr. Wechselberger's opinions were not expressly in direct contradiction to the Claim Construction Order, they are unreliable and ambiguous based on Mr. Wechselberger's "***interchangeably***" using "decrypting" to mean "descrambling."  The opinions that Mr. Wechselberger sets forth regarding the '091 and '635 Patent are utterly vague in view of this ambiguity."  In every instance in which he opines that a reference satisfies the "decrypting" limitation, PMC cannot discern whether he is referring to "decrypting" as construed by the Court or "descrambling" as expressly rejected by the Court.

his unqualified determinations that these "systems" were publicly known, in public use or on sale prior to the priority dates of the patents-in-suit.  Mr. Wechselberger offers no evidence corroborating his conclusion that the alleged Oak Sigma "system" was publicly known, in public use or on sale "as early as May 1984" (Ex. A ¶¶ 251, 620, 932); that the alleged VideoCipher "system" was publicly known, in public use or on sale by "at least as [sic] 1983" (Ex. A ¶ 295); or that the alleged Oak ORION "system" was publicly known, in public use or on sale "by before Nov. 3, 1981 and Sept. 11, 1987" (Ex. A ¶¶ 206, 525, 881).[7]  Mr. Wechselberger's conclusory statements, without corroborating evidence, are insufficient and unreliable.  *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002) ("oral testimony of prior public use must be corroborated in order to invalidate a patent"); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366-68 (Fed. Cir.1999); *Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.,* 143 U.S. 275, 284 (1892).

Notwithstanding the lack of corroborating evidence demonstrating that the prior art "systems" were publicly known, publicly used or on sale prior to the priority dates of the patents-in-suit, Mr. Wechselberger also fails to set forth the factual bases to support his conclusions that these "systems" had the capabilities that he now claims.  It is improper to "cobble[] together" bits and pieces of various references "to try and make it look like prior art," as Mr. Wechselberger has done with his invalidity theories based on these three systems.  *Eolas Tech., Inc. v. Adobe Sys., Inc.*, et al., 6:09-cv-00446-LED, Dkt. 1371 at 18:20 to 19:2 (E.D. Tex. February 6, 2012) (Davis, J.)(discussing motion in limine).  Likewise, testimony about how

---

[7] While in one instance Mr. Wechselberger does refer to a "Oak October 6, 1980 Memo" in arguing that the Oak ORION system was in "public use "as early as October 1980," Ex. A ¶ 206, the document in question is completely devoid of any reference to "ORION," much less the complete technical features the he alleges meets the claimed limitations.  Ex. J. He acknowledged at deposition that the document contains no reference to the Oak Orion system and it is only based on his belief, without corroborating evidence, that this document refers to the Orion system.  Ex. F at 95:14-97:12.

13

something "used to" work requires corroboration, which Mr. Wechselberger fails to provide. *Juicy Whip*, 292 F.3d at 743.

For example, Mr. Wechselberger bases his theories of invalidity on a set of disparate, internal, confidential documents, none of which discloses a unitary, coherent version of a "system" as of a specific date that was publicly used or sold in the United States. The vast majority of the documents that Mr. Wechselberger cites to concerning the Oak ORION "system" are Oak internal company documents that are marked as confidential or proprietary, and none of which appears to have been distributed externally. *See, e.g.*, Ex. G (APL-PMC_00004097) (marked as "confidential" and "proprietary" and "Disclosure is prohibited"); Ex. H (APL-PMC_00004021) (marked as "COMPANY CONFIDENTIAL"). Indeed, Mr. Wechselberger acknowledged that Oak zealously maintained these documents as confidential. *See, e.g.*, Ex. F at 96:14-22; 100:23-101:17; 107:6-17; 110:11-23. Many of these same documents are also clearly forward-looking design specifications, with no evidence that any publicly available system—if such systems even existed—contained the cited functionality. Ex. I ("Rev. C", APL-PMC_00004124) at 1 ("The Oak Satellite Security System *will* consist of a group of products which *will* provide secure transmissions of video and audio signals over satellites ..."); at 3 ("The satellite security system *will* consist of an address control computer, a pre-encoder, a post encoder and a decoder to be used in conjunction with microwave and satellite equipment.") (emphasis added). And yet, Mr. Wechselberger concludes, without reason or explanation, that these systems were publicly known, used or on sale prior to the priority dates of the patents-in-suit and that these systems contain the claimed functionality.

Moreover, many of the documents Mr. Wechselberger relies upon do not even make any reference to the "system" in question. For example, in many instances, Mr. Wechselberger opines that the alleged Oak ORION "system" had certain functionalities based on documents that

14

do not mention the "ORION" system at all.  Ex. J (Oak October 6, 1980 Memo); Ex. K (Oak March 5, 1980 Memo); Ex. F at 96:23-97:12 ("I don't see the word Orion mentioned in this document").  As a result, Mr. Wechselberger repeatedly relies on documents that clearly describe other systems.  *See, e.g.*, Ex. A at ¶¶ 209-216, 229-232, 887-900 (relying on "Oak February 12, 1981 Memo" (Ex. L) in support of his theories concerning the alleged Oak ORION "system" even though the Memo describes "the Sigma System"); Ex. A ¶¶ 623-709 (relying on the "Oak May 26, 1981 Memo" (Ex. H) in support of the alleged Oak Sigma "system" even though the Memo describes the ORION system).  Similar defects are abundant throughout Mr. Wechselberger's opinions regarding the VideoCipher "system."  *See, e.g.*, Ex. A ¶¶ 296-337 (citing to SRD-3000 (Ex. M) and SRD-7000 (Ex. N) (undated non-technical documents of different descrambler models).

Mr. Wechselberger fails to provide the factual predicate to support his blanket, unsupported assertions that these alleged systems were publicly known, publicly used, or on sale and that the systems had the claimed functionalities.  His opinions regarding so-called "systems" are unreliable and lack sufficient corroboration.  *Neutrino Development Corp. v. Sonosite*, *Inc.*, 410 F.Supp.2d 529 at 548 (S.D. Tex. 2006) ("[Expert] [t]estimony is insufficient if it is merely conclusory," and excluding the expert testimony regarding anticipation as "not sufficiently reliable under *Daubert* and is therefore inadmissible"); *Finnigan*, 180 F.3d at 1366–68.  For at least these reasons, the Court should exercise its gate-keeper function under *Daubert* and strike these portions of Mr. Wechselberger's report.

## IV.    CONCLUSION

For all of the above reasons, PMC respectfully moves to strike paragraphs 120-159, 187-188, 206-337, 346-376, 501-524, 525-709, 881-981 of the Wechselberger Report.

Dated:  November 21, 2016                    /s/ Elizabeth L. DeRieux

Douglas J. Kline
Lana S. Shiferman
GOODWIN PROCTER, LLP
100 Northern Avenue
Boston, Massachusetts 02210
P:  (617) 570-1000
F:  (617) 523-1231
email:  dkline@goodwinlaw.com
email: lshiferman@goodwinlaw.com

Jennifer A. Albert
Stephen T. Schreiner
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC 20001
P:  (202) 346-4000
F: (202) 346-4444
email:  jalbert@goodwinlaw.com
email:  sschreiner@goodwinlaw.com

S. Calvin Capshaw (State Bar No. 03783900)
Elizabeth L. DeRieux (State Bar No. 05770585)
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
P:  (903) 845-5770
email:  ccapshaw@capshawlaw.com
email:  ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Personalized Media Communications, LLC*

16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served via CM/ECF on Apple's counsel of record on November 21, 2016.

/s/    Elizabeth L. DeRieux

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 18, 2016, counsel for both parties met and conferred regarding the contents of this motion and reached an impasse.

/s/       Lana Shiferman