# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC, § § § *Plaintiff*, § § v. § APPLE, INC., § § *Defendant*. § § § § | CIVIL ACTION NO. 2:15-CV-01366-JRG |

## MEMORANDUM ORDER

Before the Court is Plaintiff Personalized Media Communications, LLC's ("PMC") Motion to Strike Apple Inc's Counterclaims V and VI and Fifth through Ninth, Eleventh, and Fourteenth Affirmative Defenses. (Dkt. Nos. 250, 251). After thorough consideration of the pleadings and briefing (Dkt. Nos. 236, 250, 251, 277, 286, 303), the Court finds that the Motion should be **GRANTED-IN-PART**. For the reasons that follow, the Court **STRIKES** Defendant Apple, Inc.'s estoppel, patent misuse, license/exhaustion, and government sales affirmative defenses. In all other respects, the Motion is **DENIED**.

I.   **BACKGROUND**

PMC sued Apple on July 30, 2015. (Dkt. No. 1). PMC filed an Amended Complaint on October 14, 2015. (Dkt. No. 18). Apple filed a timely motion to dismiss under Fed. R. Civ. P. 12(b)(6) on December 2, 2015. (Dkt. No. 34). The case proceeded through the normal stages of pretrial litigation and discovery. On September 13, 2016, the undersigned recommended that the 12(b)(6) motion to dismiss be denied. (Dkt. No. 209, at 23–24). No objections were filed, and the Court adopted the report and recommendation on September 29, 2016. (Dkt. No. 230).

The next day, Apple served on PMC its Seventh Supplemental and Amended Disclosures ("Seventh Disclosures"). (*See* Mot. Ex. J, Dkt. No. 250-11). In the Seventh Disclosures, Apple disclosed defenses and counterclaims of non-infringement; invalidity; double patenting; laches; prosecution laches; inequitable conduct; unclean hands and patent misuse; estoppel; waiver and acquiescence; license, exhaustion, first sale and full compensation; no entitlement to injunctive relief; statutory limitations on damages; government sales; and no entitlement to costs. (*Id.* at 3–6). Until that time, Apple had not included these defenses in its disclosures. In previous disclosures, Apple merely included the following text:

> Apple has filed a motion to dismiss PMC's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.I. 34. Because the motion to dismiss is still pending, Apple has not yet filed an answer. As a result, Apple reserves the right, consistent with Rule 26(e) to modify, amend, and/or supplement the disclosures made herein if Apple is required to answer the First Amended Complaint or any further amended complaint that PMC is permitted to file.

(Sixth Disclosures, Mot. Ex. G, Dkt. No. 250-8; *see also* Fifth Disclosures, Mot. Ex. F, Dkt. No. 250-7 (same); Fourth Disclosures, Mot. Ex. E, Dkt. No. 250-6 (same); Third Disclosures, Mot Ex. D, Dkt. No. 250-5 (same); Second Disclosures, Mot. Ex. C, Dkt. No. 250-5 (same); First Disclosures, Mot. Ex. B, Dkt. No. 250-3 (same); Initial and Additional Disclosures, Mot. Ex. A, Dkt. No. 250-2 (same)).

Apple filed its Answer on October 13, 2016. (Dkt. No. 236). In the Answer, Apple pleaded its affirmative defenses and counterclaims in greater detail. The affirmative defenses as numbered included prosecution laches (Fifth), inequitable conduct (Sixth), unclean hands (Seventh), patent misuse (Eighth), estoppel (Ninth), exhaustion, license, first sale, and full compensation (Eleventh), and sales to government (Fourteenth), among others. The counterclaims as numbered included unenforceability due to prosecution laches (Count V) and unenforceability due to inequitable conduct (Count VI), among others.

PMC moved to strike the aforementioned affirmative defenses and counterclaims, contending they were not timely disclosed under the Court's discovery order. PMC moved in the alternative to dismiss a smaller subset of the affirmative defenses and counterclaims—inequitable conduct (Sixth Affirmative Defense and Counterclaim Count VI), unclean hands (Seventh Affirmative Defense), and patent misuse (Eighth Affirmative Defense)—for failure to meet the heightened pleading standards of Fed. R. Civ. P. 9(a).

This case was stayed pending *inter partes* review ("IPR") of the two asserted patents, U.S. Patent Nos. 8,191,091 (the "'091 Patent") and 8,559,635 (the "'635 Patent"), on February 21, 2017. (Dkt. No. 355). During the stay, the Patent Trial Appeal Board (PTAB) invalidated all claims of U.S. Patent No. 8,191,091 (the "'091 Patent"), but the Federal Circuit revived claims 13–16, 18, 20, 21, 23, and 24. (*Id.* at 1). The '635 Patent is still before the PTAB. (Dkt. No. 373). On June 18, 2020, the Court severed out the '635 Patent, and the claims relating to it remain stayed. (*Id.*). The Court lifted the stay as to the '091 Patent, which is now set for trial. (*Id.*).

## II.     LEGAL STANDARDS

### A.     Discovery and Disclosures Obligations

Under the Discovery Order in this case—as is typical of discovery orders in this district—the parties had an obligation to disclose "the legal theories and, in general, the factual bases of the disclosing party's claims or defenses" as a part of their Initial Disclosures, in lieu of those mandated by Fed. R. Civ. P. 26(a)(1). (Discovery Order, Dkt. No. 56 ¶ 1(c)). The Discovery Order set a deadline for Initial Disclosures in this case of January 5, 2016. (*Id.*). Under both the Discovery Order and this Court's Local Rules, a party is not excused from disclosure or responding to discovery because there are pending motions to dismiss, to remand, or to change venue. (*Id.* ¶ 10); L.R. CV-26(a).

3

If a party fails to make disclosures as required under Rule 26(a), the Court may issue a sanction "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The sanctions available to the Court include precluding the party from using the withheld information or witness, ordering the payment of reasonable expenses and attorneys' fees, informing the jury of the party's failure, or imposing "other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Fed. R. Civ. P. 37(c)(1)(A)–(C). Those orders include "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii).

To determine whether a failure to disclose was substantially justified or harmless, the Court must consider four factors: (1) the importance of the matter that was not disclosed; (2) the prejudice to the opposing party; (3) the possibility of curing such prejudice with a continuance; and (4) the explanation for the party's failure to disclose. *Primrose Op. Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563–64 (5th Cir. 2004).

### B.     Inequitable Conduct, Unclean Hands, and Patent Misuse

Inequitable conduct is essentially fraud committed on the U.S. Patent and Trademark Office (PTO). To prevail on a defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). If proven, inequitable conduct renders a patent unenforceable. *Id.*

Unclean hands is an equitable defense that applies when a party seeking relief has committed misconduct that "has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation[.]" *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. General Extractor Co.*, 290 U.S. 240, 245 (1933)). A finding of unclean hands "'closes the doors of a court of equity to one tainted with

4

inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant,' and requires that claimants 'have acted fairly and without fraud or deceit as to the controversy in issue.'" *Id.* (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814–15 (1995)).

Patent misuse is an equitable defense established when the patentee engages in conduct that impermissibly broadens a patent's physical or temporal scope with anticompetitive effect. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997); *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11-cv-00317, 2013 WL 12040726, at *2 (E.D. Tex. May 17, 2013). Patent misuse derives historically from the defense of unclean hands. *C.R. Bard Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). However, in its modern form, patent misuse hews more closely to an antitrust violation than it does to fraud or a general charge of inequitable misconduct. *Id.*

### C. Pleading Standards

Pleadings must state sufficient facts that the pleaded claim for relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleader alleges enough facts to allow the Court to draw a reasonable inference that the opposing party is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true, and views all facts in the light most favorable to the pleader, but is not required to accept the pleader's legal conclusions as true. *Id.*

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of

5

the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). In essence, Rule 9(b) requires "the who, what, when, where, and how" of the fraud to be stated in the operative pleading. *Id.* Inequitable conduct is a form of fraud and is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). However, as will be discussed below, it is not clear whether the equitable defense of unclean hands is subject to the heightened pleading standard.[1]

### III. DISCUSSION

#### A. PMC's Request to Strike Apple's Affirmative Defenses and Counterclaims

PMC asks the Court to strike seven affirmative defenses (prosecution laches, inequitable conduct, unclean hands, patent misuse, estoppel, exhaustion/license/first sale, and government sales) and two counterclaims (prosecution laches and inequitable conduct) asserted by Apple. The Court finds that Apple has violated its disclosure obligations under the Discovery Order. For the reasons detailed below, the Court will strike some, but not all, of the defenses and counterclaims PMC raises in its Motion.

##### 1. Apple Violated Its Obligations Under the Discovery Order

There can be no doubt that Apple violated its obligations under the Court's Discovery Order. The first paragraph of the Discovery Order required Apple to disclose the legal theories and factual bases of its defenses by January 5, 2016. That it did not do. Instead, Apple refused to disclose its defenses in each iteration of its disclosures "[b]ecause [its] motion to dismiss is still

---

[1] It is also not clear that patent misuse is subject to Fed. R. Civ. P. 9(b) to the extent it relies on allegations of inequitable conduct. *See Reinforced Earth Co. v. T & B Structural Sys.*, No. 3:12-CV-2704-N, 2013 WL 10989994, at *7 (N.D. Tex. Jan. 30, 2013) (collecting cases). Because the Court will strike the patent misuse defense for other reasons, this question need not be answered.

pending." Both paragraph 10 of the Discovery Order and Local Rule CV-26(a) state in plain, unmistakable language, that there are "No Excuses" for failing to make disclosures because a motion to dismiss is pending. Accordingly, the Court finds that Apple has failed to comply with the Court's Discovery Order and with the disclosures mandated therein in lieu of those required by Fed. R. Civ. P. 26(a)(1).

Apple argues that the Federal Rules of Civil Procedure did not require it to file its Answer until the Court ruled on its motion to dismiss. (Dkt. No. 277, at 7). This does not matter. Filing an answer and making timely and complete disclosures are two separate requirements with two separate deadlines. Paragraph 10 of the Discovery Order and Local Rule CV-26(a) make this distinction explicit.

### 2. Apple's Violation Was Not Substantially Justified or Harmless

Next, the Court considers whether sanctions are appropriate for the Discovery Order violation. To do so, the Court must consider whether the violation was substantially justified or harmless by weighing each of the four factors as recited in the case law. The Court ultimately concludes that Apple's failure to comply was neither substantially justified nor harmless.

#### a. Importance

The Court first considers the importance of the matter that was not disclosed and would potentially be excluded. PMC argues that Apple's late disclosure and conclusory pleading of its defenses are evidence that they are not important. (Dkt. No. 250, at 9). Apple argues that its defenses are important because they would fully dispose of PMC's claims. (Dkt. No. 277, at 12). Apple argues its estoppel defense is particularly important because it would dispose of at least two asserted patents.[2] (*Id.*). Apple also argues that its license and government sales defenses are

---

[2] As mentioned, the '635 Patent is still stayed and only the '091 Patent is set for trial.

particularly important because, "if not asserted, they would allow PMC to recover damages to which it is not legally entitled." (*Id.*)

After a careful reading of Apple's answer, the Court observes that Apple's defenses as pleaded reflect varying levels of importance. Apple's Counterclaim Count V, prosecution laches, includes twenty-one paragraphs of specific factual allegations. (Answer ¶¶ 192–213). Likewise, Apple's Counterclaim Count VI, inequitable conduct, includes nineteen paragraphs of specific factual allegations. (*Id.* ¶¶ 214–33). Apple's affirmative defenses of prosecution laches, inequitable conduct, and unclean hands incorporate these paragraphs by reference. (*Id.* ¶¶ 150–52). Those counterclaims and defenses were important enough for Apple to plead in detail. In contrast, Apple's defenses of estoppel, exhaustion/license, and government sales are conclusory, one paragraph allegations without factual support. (*Id.* ¶¶ 154, 156, 159). Apple's patent misuse defense incorporates the allegations for its inequitable conduct counterclaim, but does not stand on its own as an independent defense alleging anticompetitive activity. (*Id.* ¶ 153). These deficiencies suggest that these defenses are neither as potentially meritorious nor as important to Apple as those with ample factual support in the Answer.

### b. Prejudice

The Court next considers the potential prejudice that would be visited upon PMC if Apple is allowed to maintain its defenses and counterclaims. PMC argues that it is prejudiced because it did not have the opportunity to investigate Apple's defenses or conduct discovery from Apple or third parties during the discovery period. (Dkt. No. 250, at 9). PMC argues it was not on notice of the need to take discovery on potential sales to the government or from any entities having licenses to the patents-in-suit. (*Id.* at 9–10). Apple argues that PMC has not identified any specific discovery or evidence that it was unable to obtain. (Dkt. No. 277, at 13). Apple also suggests that

PMC should have been on notice of Apple's defenses because previous litigants have asserted similar defenses against PMC. (*Id.* at 1).

The Court agrees with PMC that it is prejudiced by not having the opportunity to have conducted discovery on Apple's defenses and counterclaims. However, the Court also observes that the degree of prejudice varies between each of the defenses and counterclaims. On the one hand, certain of Apple's defenses—such as inequitable conduct, prosecution laches, and unclean hands—encompass conduct that is more likely to be within PMC's knowledge. As to these defenses, the prejudice is somewhat reduced. On the other hand, certain defenses—such as government sales and license—are much more likely to be within the knowledge of Apple and third parties. As to these defenses, the prejudice is much greater. Notably, the patent misuse defense implicates issues of antitrust law; this could significantly expand the scope of the needed discovery and the issues before the Court. PMC is prejudiced because it has not had an opportunity to conduct discovery on these issues during the discovery period.

### c. Availability of a Continuance

The Court next turns to the availability of a continuance to cure any prejudice. PMC argues that a continuance would reward Apple for its late-stage expansion of this case's scope. (Dkt. No. 250, at 10–11). Apple argues a continuance is unnecessary because there is no prejudice to PMC. (Dkt. No. 277, at 13).

It is appropriate at this juncture to address the elephant in the room: this case was stayed for nearly three-and-a-half years. The Court is hesitant to delay PMC's right to a jury trial any further. Insofar as Apple's defenses raise jury issues—namely, license/exhaustion and government sales—continuing the jury trial to permit additional discovery would visit further prejudice upon PMC, rather than mitigate it. Therefore, striking these defenses is a more appropriate remedy than

ordering additional discovery. For issues that will be tried solely to the bench—such as Apple's equitable defenses and counterclaims—a post-verdict continuance of the bench trial to permit appropriate discovery would enable PMC to prepare to face those issues without imposing further unfair prejudice.

### d.    Explanation for the Failure to Comply

Finally, the Court considers the explanation for Apple's failure to comply with its disclosure obligations. Paragraph 10 of the Discovery Order and Local Rule CV-26(a) make clear that there are "No Excuses" for failing to make disclosures simply because a motion to dismiss is pending. Apple's explanation is therefore inadequate.

### e.    An Appropriate Sanction is to Strike Some, But Not All, of Apple's Affirmative Defenses

After considering the aforementioned factors, the Court concludes that Apple's breach of its obligations under the Discovery Order was neither substantially justified nor harmless. The Court finds that the appropriate sanction is to strike Apple's patent misuse, estoppel, license/exhaustion, and government sales defenses. As discussed above, these appear to be less important to Apple and the case than Apple's inequitable conduct and unclean hands theories. Additionally, PMC was prejudiced by its inability to conduct discovery on Apple's affirmative defenses and counterclaims; allowing discovery on Apple's license/exhaustion and government sales defenses would increase this prejudice by delaying the jury trial.

Apple's patent misuse defense is uniquely problematic. In effect, Apple purported to add issues of antitrust law to this case after the close of discovery. If allowed, this defense would materially expand and alter the scope of the bench trial and the discovery needed to prepare for it.

Apple does not provide standalone factual allegations for its patent misuse defense in the Answer.[3] The Court is not persuaded that PMC had fair notice of this defense, even after Apple disclosed its existence. Accordingly, the patent misuse defense should also be stricken.

Apple should be permitted to maintain its most important defenses and counterclaims—prosecution laches, inequitable conduct, and unclean hands—so long as PMC is afforded appropriate discovery. Accordingly, the Court intends to continue any potential post-verdict bench trial to permit PMC to take the discovery it needs to adequately respond to Apple's affirmative defenses and counterclaims.

### B.    PMC's Alternative Motion to Dismiss

In the alternative, PMC asks the Court to dismiss Apple's inequitable conduct counterclaim and its inequitable conduct, unclean hands, and patent misuse affirmative defenses. PMC argues that Apple has not pled these matters with sufficient particularity as required by Fed. R. Civ. P. 9(b). (Dkt. No. 250, at 13–15).

#### 1.    Apple Has Adequately Pled Inequitable Conduct

Turning first to Apple's affirmative defense and counterclaim of inequitable conduct, the Court concludes that Apple has met the relevant pleading standards. Apple has plausibly alleged knowing false statements or omissions (e.g., Answer ¶¶ 223, 225, 229), materiality (e.g., *id.* ¶¶ 231, 232), and a specific intent to deceive the PTO (e.g., *id.* ¶¶ 229, 232) for its counterclaim of inequitable conduct (and, by implication, its affirmative defense).

Apple has also alleged the "who" (Applicants John C. Harvey and James W. Cuddihy (*e.g.*, *id.* ¶ 218)), the "what" (failing to disclose material facts about the scope of the 1981 and 1987

---

[3] In fact, Apple does not even allege anticompetitive effects—a necessary element of patent misuse—anywhere in its Answer. Even if the Court did not strike Apple's patent misuse defense for the Discovery Order violation, the Court would be inclined to strike it for that reason.

applications (*e.g.*, *id.* ¶¶ 223–225)), the "when" (during the prosecution of the patents-in-suit (*e.g.*, *id.* ¶¶ 218, 219)), the "where" (before the PTO (*e.g.*, *id.* ¶¶ 223, 225, 229, 232)), and the "how" (via "a deliberate plan designed to overwhelm and frustrate the PTO, . . . undertaken with the intent to mislead the PTO." (*e.g.*, *id.* ¶ 232)) of the inequitable conduct. Accordingly, the Court concludes that Apple's inequitable conduct counterclaim and affirmative defense pass muster.

### 2.      Apple Has Adequately Pled Unclean Hands

Turning next to Apple's unclean hands counterclaim, the Court concludes that it is also adequately pled. As a threshold matter, it is not clear whether an unclean hands defense is subject to Fed. R. Civ. P. 9(b). The Federal Circuit has noted that inequitable conduct evolved from unclean hands but has also diverged from that doctrine in significant ways. *See Therasense*, 649 F.3d at 1285–87 (recounting the history of inequitable conduct and unclean hands in the context of patent rights). Over time, inequitable conduct came to have a "wider scope and stronger remedy," and "came to require a finding of both intent to deceive and materiality." *Id.* These elements are common between inequitable conduct and traditional common law fraud. *See, e.g.*, *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977); *Wilson v. Jones*, 45 S.W.2d 572, 573 (Tex. Comm'n App. 1932, holding approved). By contrast, unclean hands does not require a showing of fraud. *See, e.g.*, *Gilead*, 888 F.3d at 1239 (unclean hands premised on business and litigation misconduct). Some district courts have stated that a defense of unclean hands is nonetheless subject to Fed. R. Civ. P. 9(b) when it is premised on a claim of fraud or inequitable conduct. *See AbbVie Inc. v. Boehringher Ingelheim Int'l GmbH*, No. 17-cv-01065, 2018 WL 2604825, at *1 (D. Del. June 4, 2018); *NDK, Inc. v. Pandora Jewelry, LLC*, No. 3:07-cv-0457, 2008 WL 11350017, at *2 n.7 (N.D. Tex. Apr. 23, 2008); *Xilinx, Inc. v. Altera Corp.*, No. C. 93-20409, 1993 WL 767688, at *2 (N.D. Cal. Oct. 25, 1993).

Ultimately, it is not necessary to answer this question definitively because the Court concludes that Apple's Answer would pass muster under either standard. Here, the unclean hands defense is premised on inequitable conduct. Even if it were subject to Fed. R. Civ. P. 9(b), the Court has concluded that the inequitable conduct allegations meet the heightened standard. It follows that Apple's unclean hands would meet Fed. R. Civ. P. 9(b)'s standard, and it would necessarily meet a laxer standard. Accordingly, the Court concludes that Apple's unclean hands defense is adequately pled.

## IV.  CONCLUSION

For the reasons stated above, PMC's Motion is **GRANTED-IN-PART**. Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) and 37(c)(1), the Court **STRIKES** the following affirmative defenses from Apple's Answer (Dkt. No. 236):

- Eighth Affirmative Defense – Patent Misuse (¶ 153)
- Ninth Affirmative Defense – Estoppel (¶ 154)
- Eleventh Affirmative Defense – Exhaustion, License, First Sale, and Full Compensation (¶ 156)
- Fourteenth Affirmative Defense – Sales to Government (¶ 159)

It is **ORDERED** that Apple shall not raise any of these defenses either in a trial before the jury (to the extent they are jury issues) or in a trial before the Court.

It is further **ORDERED** that the parties shall meet and confer and, within **seven (7) days** of the acceptance of a jury verdict, file a joint proposed schedule for post-verdict discovery, to the extent any is needed by PMC, on Apple's remaining prosecution laches, inequitable conduct, and unclean hands affirmative defenses and counterclaims. The joint proposed schedule shall clearly indicate any disputes between the parties as to the scope and schedule of such discovery. After the

completion of post-verdict discovery, if any, the Court will conduct a bench trial on Apple's remaining equitable defenses.

In all other respects, PMC's Motion is **DENIED**.

**SIGNED this 2nd day of February, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE